**Randy William CRIDER,**
**Plaintiff–Appellee,**

v.

**UNITED STATES of America,**
**Defendant–Appellant.**

No. 88–2944.

United States Court of Appeals,
Fifth Circuit.

Oct. 10, 1989.

Deborah Ruth Kant, John F. Cordes, Appellate Staff, Civil Div., Washington, D.C., Harold Wayne Campbell, Corpus Christi, Tex., defendant-appellant.

Benjamin Sley, Corpus Christi, Tex., for plaintiff-appellee.

Esther L. Hajdar, Kevin O'Hanlon, Asst. Attys. Gen., Austin, Tex., for other interested party-the Texas Rehab.

Before GEE and JONES, Circuit Judges, and HUNTER,* District Judge.

EDITH H. JONES, Circuit Judge:

Randy William Crider brought this action under the Federal Tort Claims Act[1] ("FTCA") seeking recovery for tragic injuries he suffered in a collision between his motorcycle and an automobile driven by an intoxicated driver. Crider contends that his injuries were proximately caused by the negligence of United States Park Rangers who failed to take the intoxicated driver into custody when they stopped him ten hours before the accident. After a non-jury trial the district court awarded Crider $7.5 million in damages. Having determined that Texas tort law will not support a finding of negligence against the government in this case, we must reverse.

## BACKGROUND

At approximately 3:40 p.m. on July 23, 1983, two park rangers of the United States Park Service stopped a car driven by eighteen year old John Landry. The rangers had observed Landry speeding along the beach at the Padre Island National Seashore with two teenage girls hanging onto the hood of his car. Upon stopping Landry, the rangers detected the aroma of alcohol on his breath and searched the car. They discovered approximately four ounces of marijuana butts and leaves, a homemade pipe for smoking marijuana, a partially-empty bottle of whiskey, and eight bottles of beer. One of the rangers testified that Landry had extremely red eyes, a symptom of marijuana smoking.

Though the district court found that Landry was intoxicated at the time he was stopped, the rangers did not charge him with driving while intoxicated or arrest him. Instead, the rangers issued Landry citations for possession of a controlled substance, possession of alcohol by a minor, speeding, and failure to have mandatory liability insurance. The citations required Landry to appear before a United States Magistrate the following Monday. One of

the rangers instructed Landry not to drive for an hour and a half so that he could sober up. The rangers then left to take the two girls back to their station and arrange other transportation for them.

Ignoring the ranger's instructions, Landry left the scene immediately after the rangers did. Later that day he picked up a friend, James Wallace, illegally purchased more whiskey, and went home to "drink it up" with his friends. Throughout the evening and into the early morning Landry continued to drink alcohol and smoke marijuana. Sometime after midnight, Landry took Wallace home. On his way back he collided with the motorcycle ridden by Randy Crider. The accident occurred at 1:40 a.m., as Landry attempted to pass three cars while driving 80 miles per hour. Crider suffered a severed left arm as a result of the collision, and his left leg was later amputated above the knee because of its severe mutilation.

In this FTCA action, Crider alleges that the park rangers were negligent in not arresting Landry and that such negligence was a proximate cause of his injuries. The district court, after a non-jury trial, ruled that the rangers had been negligent and held the United States liable for Crider's damages.

The United States raises four issues on appeal. First, the government argues that it cannot be held liable because law enforcement decisions like those made by the park rangers fall within the "discretionary function" exception of the FTCA. 28 U.S.C. § 2680(a) (1982). Second, the government asserts that Texas law imposed no tort duty on the rangers to restrain an intoxicated driver. Third, it is contended that the district court erred in holding that the rangers' alleged negligence, ten hours before the accident, was a proximate cause of Crider's injuries. Finally, the government asserts that the district court erred in awarding a structured judgment and in failing to make the findings of fact required to justify the damages award-

---

* District Judge of the Western District of Louisiana sitting by designation.

1. 28 U.S.C. §§ 1346(b), 2671, *et seq.* (1982).

ed. We limit our analysis to the duty issue, since it is dispositive.

### ANALYSIS

Under the FTCA, the United States is liable for the negligence of its employees "in the same manner and to the same extent as a private individual under like circumstances...." 28 U.S.C. § 2674 (1982). In determining whether a "private person" would be liable, we are to look to the law of the state "where the act or omission occurred." 28 U.S.C. § 1346(b) (1982); *see Rayonier, Inc. v. United States*, 352 U.S. 315, 318, 77 S.Ct. 374, 376, 1 L.Ed.2d 354, 357 (1957). Principles of Texas tort law accordingly govern the question of the United States' liability in this case.

The dispositive inquiry here is the first question addressed in all negligence cases: whether the defendants, the park rangers, owed a duty to the plaintiff. *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex. 1987). Texas law furnishes two types of authority with regard to duty, either of which arguably determines whether a "private individual" would be liable to Crider "under like circumstances." Texas courts have rejected the proposition that a law enforcement officer may owe a duty to arrest or restrain a suspect in order to prevent third-party injuries. On the other hand, commencing with *Otis Engineering Corp. v. Clark*, 668 S.W.2d 307 (Tex.1983), the state supreme court created a duty resting upon an employer of a visibly intoxicated employee to prudently restrain the employee from causing harm to third parties. Under examination, neither type of case supports a duty owed by the park rangers to Crider.

### A. *Law enforcement officer's duty.*

■ The government contends that the FTCA, in abrogating sovereign immunity where a "private individual" would be liable "under like circumstances," precludes us from considering whether Texas recognizes some duty on the part of law enforcement officers. By contrast in *Louie v. United States*, 776 F.2d 819, 825 (9th Cir. 1985), a case closely analogous to this one, the government prevailed in its assertion that

> Reference to Washington law, setting forth the liability of state and municipal entities to establish the government's standard of liability under the FTCA, is both necessary and proper. *Id.*

Under the special circumstances involved, we think the government got it right in *Louie.* We are not looking to state law insofar as it immunizes a public entity from liability; rather, we are seeking "like circumstances" which best articulate a state's negligence law.

Mr. Louie's widow filed suit under the FTCA because her husband died in a collision with a drunken off-duty soldier. She alleged that the military police, who fetched the soldier back to Fort Lewis after his off-post citation for driving while intoxicated, should have kept him in custody until he became sober. They did not do so, and the fatal accident occurred a few hours later.

The Ninth Circuit first addressed whether Washington's law of municipal corporations or of a private special relationship was the proper vehicle for assessing FTCA liability. The court conducted its analysis under both lines of authority, but it concluded that municipal liability principles were controlling. The court reasoned:

> The circumstances here involve government employees in a law enforcement function. Questions as to the power and authority to arrest, to maintain custody, and to lawfully restrict a person's liberty are unique to the law enforcement function. Because private persons do not wield such police powers, the inquiry into the government's liability in this situation must include an examination of the liability of state and municipal entities "under like circumstances."

*Louie v. United States*, 776 F.2d 819, 825 (9th Cir.1985). This interpretation of "like circumstances" seems compelling. We must disregard state rules of sovereign or official immunity in analyzing the scope of FTCA liability, because these conflict with Congress's analogy to "private person" liability under § 2674. *See United States v.*

*Muniz*, 374 U.S. 150, 164, 83 S.Ct. 1850, 1859, 10 L.Ed.2d 805, 816 (1963); *Wright v. United States*, 719 F.2d 1032, 1034–35 (9th Cir.1983). Similarly, the performance of a "uniquely governmental function" has repeatedly been rejected as a defense to FTCA liability. *Rayonier, Inc. v. United States*, 352 U.S. 315, 319, 77 S.Ct. 374, 376, 1 L.Ed.2d 354, 358 (1957); *Indian Towing Co. v. United States*, 350 U.S. 61, 64, 76 S.Ct. 122, 124, 100 L.Ed. 48, 53 (1955); *B & F Trawlers, Inc. v. United States*, 841 F.2d 626, 630–31 (5th Cir.1988). These rules should not, however, require us to ignore a state's law enunciating negligence principles based on "like circumstances" without regard to local sovereign immunity. In *Louie*, Washington State had waived sovereign immunity, and the court went on to find that employees of political subdivisions there owe no duty to a given member of the public such as Mr. Louie.

Texas courts have twice considered on the merits, irrespective of official or sovereign immunity claims, whether a police officer has any tort duty to protect the public from acts of a criminal suspect.[2] Each time, the court declined to impose any such duty. *Dent v. City of Dallas*, 729 S.W.2d 114, 116 (Tex.App.—Dallas 1986, writ ref'd n.r.e.); *Munoz v. Cameron County*, 725 S.W.2d 319, 321–22 (Tex.App.—Corpus Christi 1986, no writ).

In *Dent*, the statutory beneficiaries of an innocent motorist killed in a collision with a suspect trying to evade police sought to recover from the officer who had failed to arrest the suspect promptly and from the officer's employer, the City of Dallas. The court observed that "[w]hether a police officer owes a special duty to one injured or killed by a person whom the officer had probable cause to arrest, but either elected not to do so or made an inadequate attempt to arrest, is a question of first impression in this state." *Dent*, 729 S.W.2d at 116. Other states, however, have "uniformly held that the officer's duty is a duty to the public at large to enforce the criminal law and that the officer owes no special duty to the individual injured." *Id.* Following this "public duty" rationale, the court concluded that the officer had breached no actionable duty to the deceased. The court's decision rejected a finding of duty in broad terms:

> Appellants are seeking to hold the City of Dallas and one of its police officers liable for the officer's discretionary decisions as to if, how, and when to arrest a person suspected of attempting to pass a forged prescription. If we were to uphold the finding of liability on the part of Officer Reed for his actions, then, to avoid liability, police officers would have to *arrest all persons* stopped by them for whatever reason (be it jaywalking, expired license tags, etc.) lest these persons attempt escape and cause injury to somebody during their flight from justice. Sound jurisprudence as well as the public interest could not tolerate such a holding.

*Dent*, 729 S.W.2d at 116.

Similarly, in *Munoz*, the plaintiffs sought to recover for the alleged negligence of a county sheriff in failing to promptly execute an arrest warrant on the plaintiffs' father, who subsequently shot and killed their mother. In concluding that the sheriff owed the plaintiffs no actionable duty, the court followed the "public duty" rationale, holding that while a sheriff does owe a duty to execute arrest warrants, that duty is owed to the public at large, not to any individual plaintiff. *Munoz*, 725 S.W.2d at 321–22.

Absent a strong indication that the Texas Supreme Court would decide the case differently, decisions of the Texas courts of appeals are controlling on questions of state law in this court. *Mott v. Mitsubishi International Corp.*, 636 F.2d 1073, 1074 (5th Cir. Unit A Feb. 1981). Thus, under

2. In his brief, Crider cites *State v. Terrell*, 588 S.W.2d 784 (Tex.1979); *Eubanks v. Wood*, 304 S.W.2d 567 (Tex.Civ.App.—Eastland 1957, writ ref'd n.r.e.); and *Asher v. Cabell*, 50 F. 818 (5th Cir.1892), for the general proposition that a police officer can be liable for his own negligence under Texas law. Since none of those cases involved the issue of an officer's liability for failing to make an arrest, they do not involve "like circumstances" to the present case.

existing Texas law a police officer owes no duty to a specific plaintiff to arrest a suspect.[3]

### B. Duty of a Private Person for Conduct of an Intoxicated Person.

■ If we examine the liability of the United States in terms of the duty of ordinary private citizens in Texas, we reach the same result. The district court found that the rangers owed Crider a duty to restrain Landry based on *Otis Engineering Corp. v. Clark*, 668 S.W.2d 307 (Tex.1983). However, the duty established in *Otis Engineering* is inapplicable to this case.

*Otis Engineering* was a wrongful death case brought by the survivors of two women killed in an accident with an intoxicated Otis employee. The employee's supervisor had sent him home after discovering that he was intoxicated on the job, and the fatal accident occurred on the employee's way home. Whether Otis owed any duty to the decedents was the issue. The Texas Supreme Court recognized that as a general rule a person is under no duty to control the conduct of another, even if he has the practical ability to exercise such control. *Otis Engineering*, 668 S.W.2d at 309. The Court nevertheless determined that where "because of an employee's incapacity, an employer exercises control over the employee, the employer has a duty to take such action as a reasonably prudent employer under the same or similar circumstances would take to prevent the employee from causing an unreasonable risk of harm to others." *Id.* at 311.

Two factors in *Otis* appear critical to the duty it created: the employer-employee relationship and the "affirmative act" by Otis in sending the employee home.[4] No Texas court has expanded *Otis Engineering* to a relationship other than that of employer-employee. *See Shankle v. United States*, 796 F.2d 742, 746 (5th Cir.1986).[5] In addition, the Texas courts of appeals, in applying *Otis Engineering*, have made it clear that "for an employer to be held liable under the *Otis Engineering* doctrine, such employer must perform an affirmative act of control over the incapacitated employee." *Moore v. Times Herald Printing Co.*, 762 S.W.2d 933, 934 (Tex.App.—Dallas 1988, no writ). In *Otis Engineering*, the affirmative act of control was sending the employee home. Where employers have merely allowed an intoxicated or incapacitated employee to drive, Texas courts have denied liability. *Moore, supra; Pinkham v. Apple Computer, Inc.*, 699 S.W.2d 387, 390 (Tex.App.—Fort Worth 1985, writ ref'd n.r.e.). Since it is not our province to extend the boundaries of Texas law, *Dean v. Dean*, 821 F.2d 279, 284 (5th Cir.1987), we decline to apply *Otis Engineering* beyond the precise contours of that case.

Even if *Otis* should be considered in every Texas drunken driving case, neither the relationship between Landry and the park rangers nor their "affirmative acts"

---

3. *Dent* and *Munoz* did not deal specifically with the failure to restrain a drunk driver. A clear majority of the states that have considered the exact question whether a police officer can be liable for failing to restrain a drunk driver have applied the same "public duty" rationale followed by *Dent* and *Munoz*, and have concluded that the officer owed no duty to the injured plaintiff. *E.g.*, Annotation, *Failure to Restrain Drunk Driver as Ground of Liability of State or Local Government Unit or Officer*, 48 A.L.R. 4th 320 (1986); *Barratt v. Burlingham*, 492 A.2d 1219 (R.I.1985) (cited in *Munoz*); *Shore v. Stonington*, 187 Conn. 147, 444 A.2d 1379 (1982) (cited in both *Dent* and *Munoz*); *Harris v. Smith*, 157 Cal.App.3d 100, 203 Cal.Rptr. 541 (1984); *see also Louie v. United States*, 776 F.2d 819 (9th Cir.1985) (applying Washington Law).

4. The State Supreme Court held, "we do not view this as a case of employer nonfeasance." 668 S.W.2d 309–10.

5. Since *Shankle* was decided the Texas Supreme Court has decided *El Chico Corp. v. Poole*, 732 S.W.2d 306 (Tex.1987), in which the court imposed "dram shop" liability by holding sellers of alcohol liable when they serve intoxicated customers who are subsequently involved in accidents. *El Chico, supra.* The duty created in *El Chico* is a narrow one, *see Walker v. Children's Services, Inc.*, 751 S.W.2d 717 (Tex.App.—Amarillo 1988, writ. denied) (refusing to expand the duty created in *El Chico* to social hosts); *La Fleur v. Astrodome—Astrohall Stadium*, 751 S.W.2d 563, 565 (Tex.App.—Houston [1st] 1988, no writ) (narrowly construing *El Chico*), and is not applicable to this case.

should give rise to a legal duty.[6] The *Otis Engineering* duty appears to arise from a relationship in which Otis not only had the ability to control its employee, but also stood to profit from his work and continued wellbeing. Their relationship was created voluntarily and mutually. The Supreme Court keys its duty holding upon comparison with "a reasonably prudent employer". 668 S.W.2d at 311. The trier of fact is instructed to gauge whether Otis fulfilled its duty by "the availability of the nurses' aid station, a possible phone call to Mrs. Matheson [or] having another employee drive Matheson home ..." *Id.*

No serious comparison can be drawn between an employer-employee relationship and that of Landry and the park rangers. The rangers and Landry did not associate voluntarily or mutually. The rangers could in no way profit or benefit from their relation with Landry. Their ability to "control" him was strictly limited within the confines of their responsibilities. To extend their "control" further would conflict with our libertarian views of the police function. Surely, too, it presses the potential liability of law enforcement officers— or of any group—to the extreme to suggest that just by having contact with a potentially dangerous actor they become responsible in tort for his conduct. *Otis Engineering* disavows any such intent, stating that "a duty ... would not be based on *mere knowledge* of Matheson's intoxication, but would be based on additional factors." (emphasis in original) 668 S.W.2d at 309.

Additional factors are inherent in the employer-employee relationship that starkly distinguish it from the present case. There is ordinarily a workplace and often a nurses' station or quiet area where an employer could sequester an intoxicated worker while he sobers up. Such facilities will rarely be available to the policeman on the beat—unless he drops everything and becomes unavailable for other duty while he handles the drunk. *Otis Engineering* is willing to impose on employers the cost of an interruption in their business while they tend to an intoxicated employee, but that cost is objectively quantifiable and not physically risky. Imposing such a cost on law enforcement is entirely different, however, because of the unpredictability and potential danger of the job and the high risk of imposing artificial priorities on it. *Otis Engineering* seems to create a unique species of liability premised on the employer-employee relation.

The other prong of *Otis*, that of an affirmative act of control, poses a more difficult theoretical problem. We address it purely for the sake of argument, as the notion of "control" in *Otis Engineering* seems to relate so closely to the master-servant relationship which we have already found inapplicable for law enforcement. In *Otis Engineering*, as we have noted, the affirmative act of control was held to be sending Matheson home while intoxicated. Without further intervention by Otis, this order was tantamount to putting him on the road in a dangerous condition. Here, by contrast, the park rangers merely failed to deny Landry the opportunity to drive while intoxicated by not arresting him or taking away his car keys. *Compare Moore, supra.* One of them told him not to drive for an hour and a half and threatened an arrest warrant if he ignored that advice. Landry was on the beach, with plenty of room to relax and no clear need to travel. Thus, the officers' actions by no means foreordained that Landry would drive while still seriously intoxicated. The essence of Crider's claim is not an affirmative act of control as in *Otis Engineering* but the officers' failure to exercise further control by effecting an arrest. Neither the special relationship evident in *Otis Engineering* nor the affirmative act of control present there can support the imposition of a tort duty upon the park rangers.

---

**6.** *Otis Engineering* purports to rely upon a balancing of factors in determining whether the law should impose a duty, including the "risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury and consequences of placing that burden on the employer." 668 S.W.2d at 309.

In his brief, Crider also relies on § 319 of the Restatement (Second) of Torts which provides:

> One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm.

RESTATEMENT (SECOND) OF TORTS § 319 (1986). Crider argues that under this section the rangers owed him a duty to restrain Landry. This argument, while initially appealing, cannot withstand analysis. Section 319 does not represent Texas law. Moreover, Section 319 imposes a duty on one who "takes charge" of a dangerous person. Here, the entire basis of Crider's lawsuit is his claim that the rangers failed to "take charge" of Landry by failing to arrest him. Section 319 is inapplicable.

## CONCLUSION

We conclude that a "private individual" would not be liable under "like circumstances" because Texas law would not impose a duty upon either a police officer or an individual citizen to restrain a drunk driver in a case such as this. Accordingly, the United States is not subject to liability under 28 U.S.C. § 2674, and the decision of the district court imposing liability must be REVERSED.