**Bessie ELLIOTT, Individually and as Administratrix of the Estate of Charles Elliott, Deceased, et al., Appellants,**

v.

**The STATE of Texas, Appellee.**

**No. 04-91-00183-CV.**

Court of Appeals of Texas, San Antonio.

Aug. 21, 1991.

Rehearing Denied Oct. 15, 1991.

Les Mendelsohn, Ricky Poole, Speiser, Krause, Madole & Mendelsohn, Mata, San Antonio, for appellants.

Norberto Flores, Asst. Atty. Gen., Tort Litigation Div., Austin, for appellee.

Before REEVES, C.J., and BUTTS and GARCIA, JJ.

## OPINION

BUTTS, Justice.

Charles Elliott drowned in Braunig Lake when he fell out of his motorboat. His wife and children brought wrongful death and survival actions against the State alleging that his drowning was the proximate result of negligent acts and omissions of Oscar R. Correa, a law enforcement officer for the Parks and Wildlife Department. Summary judgment was granted in favor of the State. We affirm.

Officer Correa stopped Elliott's boat and asked to see his water safety equipment. Elliott indicated his life preserver was in his vehicle on the shore. Correa issued Elliott a citation for failing to have a life preserver in his boat. Correa then left the scene. Shortly thereafter, Elliott fell in the lake and drowned.

Plaintiffs alleged that Correa negligently used, misused or failed to make use of tangible personal property (his boat, towline, oars and flotation devises) in numerous particulars, and that he violated a duty to Elliott in failing to exercise ordinary care to secure his safety. Specifically, they alleged that Correa created a hazardous wake by leaving the scene at an excessive speed, which contributed to Elliott's falling into the lake; that he failed to provide him with a flotation devise; and that he failed to escort him safely to shore. Plaintiffs also alleged violations of the Parks and Wildlife Code, and that the suit was maintainable pursuant to the Tort Claims Act.

The State moved for summary judgment on the ground that it owed no duty to Elliott. It also asserted that it was immune from suit under the Tort Claims Act. TEX.CIV.PRAC. & REM.CODE ANN. § 101.021 (Vernon 1986). The summary judgment was granted on unspecified grounds.

A defendant who moves for summary judgment has the burden of showing as a matter of law that no material issue of fact exists as to the plaintiff's cause of action, and that the movant is thus entitled to judgment as a matter of law. *Griffin v. Rowden*, 654 S.W.2d 435, 435–36 (Tex. 1983); TEX.R.CIV.P. 166a(c). This may be accomplished by evidence showing that at least one element of plaintiff's cause of action has been established conclusively against the plaintiff. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex. 1970). In deciding whether a disputed material fact issue precludes summary judgment, the reviewing court will take as true all evidence favoring the non-movant. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex.1985). Every reasonable inference from the evidence will be indulged in favor of the non-movant, and any doubts will be resolved in his favor. *Id.*

## DUTY

An essential element of the plaintiffs' negligence action against the State is the proof of a duty owed by the State to Charles Elliott. *Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 309 (Tex.1983); *Abalos v. Oil Dev. Co.*, 544 S.W.2d 627, 631 (Tex.1976).

We must take as true the evidence favoring plaintiffs, yet plaintiffs' narrative of the events appears only in answers to

interrogatories. Answers to interrogatories may be used only against the party filing them. Tex.R.Civ.P. 168(2). These answers cannot be used to defeat a motion for summary judgment on the ground that they raise a material fact issue. *Walker v. Horine*, 695 S.W.2d 572, 575 (Tex.App.—Corpus Christi 1985, no writ); *Fort Bend Indep. School Dist. v. Weiss*, 570 S.W.2d 241, 243 (Tex.Civ.App.—Houston [1st Dist.] 1978, no writ).

Thus, there is no competent summary judgment evidence that the wake from Correa's boat caused Elliott to fall out of his own boat. Nor is there evidence that Elliott fell out of his boat while attempting to start the motor after the departure of Officer Correa, as alleged in the petition. The only facts established are that Correa cited Elliott for failing to have a life preserver, left him in his boat on the lake, and that Elliott subsequently drowned.[1]

The supreme court has set out a balancing test to determine whether a duty exists in a particular case.

> [F]actors which should be considered in determining whether the law should impose a duty are the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury and consequences of placing that burden on the [defendant].

*Otis Eng'g Corp.*, 668 S.W.2d at 309.

█ Plaintiffs argue that the Water Safety Act imposes duties on the State. Section 31.002 of that act provides:

> It is the duty of this state to promote recreational water safety for persons and property in and connected with the use of all recreational water facilities in the state, to promote safety in the operation and equipment of facilities, and to promote uniformity of laws relating to water safety.

Tex.Parks & Wild.Code Ann. § 31.002 (Vernon 1991). The act also requires that each motorboat contain at least one life preserver or approved flotation devise for each person on board. Tex.Parks & Wild.Code Ann. § 31.066(a) (Vernon 1991). From these provisions, plaintiffs extrapolate a duty on the part of Correa, after he issued Elliott a citation, either to escort him safely to shore or to provide him with a life preserver.

Until recently it was generally accepted that a law enforcement officer owed no duty to protect the safety of the general public from the acts of a criminal suspect. *Dent v. City of Dallas*, 729 S.W.2d 114, 116 (Tex.App.—Dallas 1986, writ ref'd n.r.e.), *cert. denied*, 485 U.S. 977, 108 S.Ct. 1272, 99 L.Ed.2d 483 (1988); *Crider v. United States*, 885 F.2d 294, 297–98 (5th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 2561, 109 L.Ed.2d 743 (1990). The officer's duty was to the public at large to enforce the criminal laws. *Dent*, 729 S.W.2d at 116.

These holdings have been thrown into some doubt recently by *Travis v. City of Mesquite*, 34 Tex.Sup.Ct.J. 231, 1990 WL 224258 (Dec. 31, 1990), a high-speed chase case. Although *Travis* dealt primarily with proximate cause, the court did touch on duty. The court noted that the legislature had enacted at least two statutes which imposed upon drivers of emergency vehicles, including police, the duty to drive with due regard for the safety of all persons using the highway. *Id.* at 233, *citing*, Tex.Rev.Civ.Stat.Ann. art. 6701d §§ 75 & 24 (Vernon 1977 & Vernon Supp.1991). The court concluded that the policy embodied in those statutes did not shield police officers from liability for automobile accidents caused by pursuit of suspects. *Id.* at 233–34.

The statutes cited by plaintiffs, however, are not analogous to those relied on by the supreme court in *Travis*. The statutes in

---

1. The only evidence of the details of the meeting between Elliott and Officer Correa appears in excerpts from Correa's deposition. The excerpts are attached to the motion for summary judgment and are properly authenticated and certified. *See Deerfield Land Joint Venture v. Southern Union Realty Co.*, 758 S.W.2d 608, 610 (Tex. App.—Dallas 1988, writ denied). Correa testified that after he separated from Elliott, he (Correa) put his boat in gear, "proceeded on out at an idle speed, got far enough away, and went to check other boats." He testified that when he left, Elliott was in no difficulty.

*Travis* imposed a specific duty on the drivers of emergency vehicles to drive with due regard for all persons using the highway. The duties imposed in section 31.002 of the Parks and Wildlife Code are general duties to promote water safety. Section 31.066, requiring motorboats to carry life preservers, imposes no duty at all on enforcement officers.

We cannot construe from the general language of section 31.002, a specific duty on the part of enforcement officers to provide life preservers to boaters who do not have them, or, in the alternative, to escort them safely to shore. The officers' duty is to promote water safety by enforcing the laws rather than by assuming the much greater burden of insuring the safety of each individual boater with whom they come into contact. The police are not insurers of the safety of law violators. *See Dent*, 729 S.W.2d at 117 (police are not insurers for the conduct of the suspects they pursue).

The Parks and Wildlife Code also requires that each motorboat carry fire extinguishers (§ 31.067), certain lights (§ 31.064), a whistle or bell (§ 31.065), a flame arrestor or backfire trap (§ 31.068), rearview mirrors (§ 31.071), and other equipment. It must follow, if we hold that Officer Correa should have provided a life preserver to Elliott, that enforcement officers must carry all this required equipment for distribution to violators.[2]

Such a ruling would, of course, be prohibitively expensive to implement and virtually impossible to execute. It would tremendously overburden our law enforcement officers and strain the resources of the governments that hire and equip them. Officers would spend disproportionate amounts of time escorting all violators to shore, which would necessitate the employment of additional officers, or disproportionate amounts of money in distributing safety equipment to every offender. Balanced against the massive burden such a

ruling would place on law enforcement is the negligible likelihood of injury or death occurring immediately following the issuance of a citation for a safety violation.

We conclude that officer Correa did not owe Elliott a duty to escort him safely to shore or to provide him with a flotation devise.

## IMMUNITY

■ When a summary judgment order does not specify the grounds on which it was granted, the party appealing the order must show that each of the independent arguments alleged in the motion is insufficient to support the order. *Rogers v. Ricane Enter., Inc.*, 772 S.W.2d 76, 79 (Tex. 1989). Thus, even if plaintiffs had shown the existence of a duty, which they have not, they would also have to negate the State's immunity defense.

■ Plaintiffs cite section 101.021(1) of the Tort Claims Act alleging that Elliott's death resulted from Correa's operation and use of motor-driven equipment. That section waives governmental immunity for personal injury and death proximately caused by the wrongful act or omission or the negligence of an employee acting within the scope of his employment if two conditions are met. First, the injury or death must arise from the operation or use of a motor-driven vehicle or motor-driven equipment. Second, liability will arise if the employee would be personally liable to the claimant under Texas law.

The Tort Claims Act does not shield governments from liability for injuries caused by the negligence of police officers in operating their police cars while acting within the scope of their employment. *State v. Terrell*, 588 S.W.2d 784, 789 (Tex. 1979). The same rule should certainly apply to Parks and Wildlife officers in the operation of their motorboats, which are motor-driven equipment. However, plain-

---

**2.** Such a rule could easily be extended to motorists. It could be held, for instance, that when a driver is ticketed for transporting a child under two years old without a safety seat, the officer must provide one lest the driver is subsequently involved in an accident in which the child is injured. *See* TEX.REV.CIV.STAT.ANN. art. 6701d § 107B (Vernon Supp.1991) (safety seat required).

tiffs have provided no competent summary judgment evidence that Elliott's death was caused or contributed to by Officer Correa's operation of his motorboat.

■ Plaintiffs also contend that Officer Correa's failure to provide tangible personal property (a life preserver) or to insure Elliott's safe return to shore brings the case within section 101.021(2). That section also has two requirements that must be met. It waives immunity for personal injury and death caused by a condition or use of tangible personal property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

Plaintiffs rely on *Robinson v. Central Texas MHMR Center*, 780 S.W.2d 169 (Tex. 1989). In *Robinson*, an epileptic patient of a mental health center drowned while swimming. It was held that the failure of the center's employees to furnish the patient with a life preserver was a "condition or use of tangible property" within the meaning of section 101.021(2). *Id.* at 171.

*Robinson* is distinguishable. The primary difference is that in *Robinson*, the mental health center was responsible for patients being dressed in proper swimming attire, which included life preservers. *Id.* Life preservers were available and had previously been supplied to another patient. *Id.* In the present case, however, the state was not responsible to insure that Elliott was provided a life preserver or was escorted to shore. Nor did the state assume those responsibilities with regard to Elliott. Nor, if the state were a private person who had noticed the absence of a life preserver on Elliott's boat, would that person be liable for failure to furnish him one. *See Buchanan v. Rose*, 138 Tex. 390, 159 S.W.2d 109, 110 (1942) (a bystander who did not create the dangerous situation has no legal duty to become "the good Samaritan" and prevent injury to others).

The case before us is more closely analogous to *Weeks v. Harris County Hosp. Dist.*, 785 S.W.2d 169 (Tex.App.—Houston [14th Dist.] 1990, writ denied). In *Weeks*, a mental health patient was transported to a hospital that had no facilities for her treat-ment. She was not officially registered into the hospital, and the hospital took no measures to restrain her while awaiting her transfer to another facility. The patient voluntarily left the hospital and returned to her home where she committed suicide. The patient's family sued the hospital district. The court held that the plaintiffs had failed to meet either requirement of section 101.021(2). *Id.* at 170. The holding turned on the fact that the patient had not been admitted into the hospital's care, and thus the hospital had not assumed a duty to provide for her well-being. Consequently, the court held, there had been no use or non-use of tangible personal property. *Id.* at 172. The court concluded, again based on the failure of the hospital to assume any responsibility toward the patient, that the hospital would not have been liable had it been a private institution. *Id.*

Likewise, in the present case, there is an absence of a duty owed to Elliott or a duty assumed for his benefit. Consequently, the State's motion for summary judgment established that there were no genuine issues of material fact concerning the existence of sovereign immunity.

The trial court's judgment is affirmed.