REVISED NOVEMBER 16, 2009

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
October 28, 2009

Charles R. Fulbruge III
Clerk

No. 08-10920

ENRIQUE VILLAFRANCA

Plaintiff - Appellant

v.

UNITED STATES OF AMERICA

Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas

Before KING, HIGGINBOTHAM, and CLEMENT, Circuit Judges.

KING, Circuit Judge:

Plaintiff–appellant Enrique Villafranca appeals the district court's judgment, following a bench trial, that he take nothing on his assault and negligence claims against the United States under the Federal Tort Claims Act. The district court determined that the federal agents did not commit an assault against Villafranca because they used reasonable force to effect a lawful arrest. The district court also found that the agents' alleged negligence was not the proximate cause of Villafranca's injuries, and thus he did not have a viable claim for negligence. Because we hold that the agents' actions were privileged under Texas law, those actions did not constitute an assault for which the United

States would be liable under the Federal Tort Claims Act. Further, the district court's finding that the agents' alleged negligence was not the proximate cause of Villafranca's injuries is not clearly erroneous. We therefore AFFIRM.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On May 21, 2003, Villafranca was talking on his cell phone while waiting to see his regular barber for a haircut in the lobby of Melissa's Salon in Dallas, Texas (the "Salon"). Shortly thereafter, United States Drug Enforcement Administration ("DEA") agents entered the Salon to execute a search warrant of the premises. The search of the Salon was one of four simultaneous searches being conducted that day as part of a drug investigation. The DEA agents, upon entering the Salon, identified themselves as police officers and secured the premises by, among other things, asking all patrons to remain seated. The agents did not have a plan for releasing the patrons after securing the premises.

The agents also ordered Villafranca to end his cell phone conversation and remain seated, but Villafranca did not comply with these orders. An agent then ordered Villafranca to place his hands behind his back with the intent to search him. Villafranca initially complied, but as the DEA agent grabbed his hands, Villafranca jerked his arm and quickly moved away. Upon witnessing this resistance, two other agents grabbed Villafranca and forced him to the ground. On the ground, Villafranca continued to resist by curling up in the fetal position and clenching his fists to his chest. The agents then forcibly handcuffed Villafranca's hands behind his back and sat him in a chair. Everyone in the Salon, including Villafranca, was permitted to leave thirty minutes to an hour later when the search concluded.

On May 1, 2006, Villafranca filed suit against the United States under the Federal Tort Claims Act ("FTCA") alleging that the DEA agents committed the torts of assault and negligence under Texas law. Villafranca claimed that he suffered severe shoulder injuries as a result of the agents' actions. The

Government filed an answer denying Villafranca's claims for assault and negligence while asserting, inter alia, the affirmative defenses that (1) its agents' conduct was privileged under Texas law, and (2) Villafranca's own conduct was the proximate cause of his injuries.

On April 1, 2008, the district court held a one day bench trial, following which it entered findings of fact and conclusions of law. Villafranca v. United States, No. 3:06-CV-0806, slip op. at 1 (N.D. Tex. Aug. 19, 2008). On Villafranca's assault claim, the district court held that, because the agents used reasonable force to effect a lawful arrest, they did not commit an assault. The district court also found that the Government's search plan was negligent because DEA agents of ordinary prudence would have included a plan for releasing the patrons after securing the premises. However, the district court went on to find that the agents' negligence was not the proximate cause of Villafranca's injuries. Because proximate cause was lacking, the district court held that Villafranca's negligence claim failed.

## II. DISCUSSION

In reviewing a bench trial, we review findings of fact for clear error and conclusions of law de novo. Water Craft Mgmt. LLC v. Mercury Marine, 457 F.3d 484, 488 (5th Cir. 2006). The district court's proximate cause and negligence findings are findings of fact that we review for clear error. Gutierrez v. Excel Corp., 106 F.3d 683, 687 (5th Cir. 1997) ("Causation is a question of fact [in Texas.]"); see also Lakomy v. United States, 70 F. App'x 199, 204 (5th Cir. 2003); Theriot v. United States, 245 F.3d 388, 394 (5th Cir. 1998). "A factual finding is not clearly erroneous as long as it is plausible in the light of the record read as a whole." United States v. Cluck, 143 F.3d 174, 180 (5th Cir. 1998) (citing United States v. Krenning, 93 F.3d 1257, 1269 (5th Cir. 1996)).

The FTCA is a waiver of sovereign immunity that allows a plaintiff to bring a civil action for damages against the Government. 28 U.S.C.

§§ 1346(b)(1), 2674; see also Truman v. United States, 26 F.3d 592, 594 (5th Cir. 1994). The FTCA states that "[t]he United States shall be liable . . . in the same manner and to the same extent as a private individual under like circumstances . . . ." 28 U.S.C. § 2674. The FTCA also permits claims based on intentional torts when they are committed by law enforcement officers. 28 U.S.C. § 2680(h); see also Bodin v. Vagshenian, 462 F.3d 481, 484 (5th Cir. 2006). Liability under the FTCA is determined "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b); see also Solis v. United States, 275 F. App'x 322, 323 (5th Cir. 2008) (citing Hatahley v. United States, 351 U.S. 173, 180 (1956)). Therefore, Texas law governs the United States's liability here.

### A. Did the Federal Agents Assault Villafranca?

#### 1. The Texas Assault Tort and Statutory Privilege

In Texas, the intentional tort of assault is identical to criminal assault. See Hall v. Sonic Drive-In of Angleton, Inc., 177 S.W.3d 636, 649 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) ("The elements of assault are the same in both the criminal and civil context[s]."). Texas Penal Code § 22.01(a) provides, in relevant part, that a person commits criminal assault if he:

> (1) intentionally, knowingly, or recklessly causes bodily injury to another . . . ;
>
> (2) intentionally or knowingly threatens another with imminent bodily injury . . . ; or
>
> (3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.

TEX. PENAL CODE ANN. § 22.01(a) (Vernon 2005).

The Texas Penal Code also provides a "civil privilege defense" to an assault claim. Specifically, § 9.51(a) provides:

> (a) A peace officer . . . is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to make or assist in making an arrest or

search . . . if:

> (1) the actor reasonably believes the arrest or search is lawful or, if the arrest or search is made under a warrant, he reasonably believes the warrant is valid; and

> (2) before using force, the actor manifests his purpose to arrest or search and identifies himself as a peace officer . . . , unless he reasonably believes his purpose and identity are already known by or cannot reasonably be made known to the person to be arrested.

Id. § 9.51(a); see also Tex. Dep't of Pub. Safety v. Petta, 44 S.W.3d 575, 579–80 (Tex. 2001) (holding that the elements of a criminal necessity defense under § 9.51 are the same as the "civil privilege defense").[1]

### 2. Was the DEA Agents' Conduct Privileged?

The issue then is whether the Government agents' conduct is privileged under § 9.51.[2] Villafranca claims that the United States should be treated as a "private person" for purposes of the FTCA analysis. See 28 U.S.C. § 2674.

---

[1] Villafranca argues that § 9.51 does not apply as a defense to civil liability for claims prior to September 1, 2007, the date of the revision of the Texas Civil Practice and Remedies Code. This argument is unpersuasive. Both this court and the Texas Supreme Court have recognized the application of § 9.51 before that date. See Saldaña v. United States, No. 99-51000, 2001 WL 85862, at *1 (5th Cir. Jan. 22, 2001) ("Under Texas law, the Government was entitled to claim section 9.51 as a defense to civil liability under the FTCA."); Hinojosa v. City of Terrell, 834 F.2d 1223, 1231 (5th Cir. 1988) ("Although limited to 'necessary' situations, a police officer is also privileged even to use actual force against a person in the performance of his duties as an officer." (emphasis in original) (citing § 9.51)); Petta, 44 S.W.3d at 579–80.

[2] Villafranca argues that the Government has waived any possibility of a § 9.51 defense by failing to raise it in its answer. We find this contention to be without merit. The Government did assert a law enforcement officer's privilege to use force in its motion to dismiss. Such an assertion suffices to raise the defense. See Terrell v. DeConna, 877 F.2d 1267, 1270 (5th Cir. 1989) ("The defendant . . . raised the defense of issue preclusion by a motion to dismiss. That motion was sufficient to raise the defense, and there was therefore no waiver."). Further, the parties' joint pretrial order listed whether "federal agents were privileged to use reasonable force in effectuating the detention of [Villafranca]." Raising the defense there was also sufficient. See Vanhoy v. United States, 514 F.3d 447, 450–51 (5th Cir. 2008) (holding that the Government did not waive an affirmative defense not pleaded in the answer because it raised the defense "at a pragmatically sufficient time" by listing the defense in the joint pretrial order).

Villafranca then argues that because the DEA agents' conduct would constitute an assault under Texas law for which a private person would incur liability, the Government is liable for assault here.[3] As support for this argument, Villafranca points to United States v. Olson, 546 U.S. 43 (2005).[4]

In Olson, the Supreme Court held that state-defined immunity (or waiver of immunity) cannot be applied to determine whether the Government has waived immunity for a particular FTCA claim. 546 U.S. at 45–46. Instead, the Supreme Court held that even where a plaintiff brings a claim based on performance of a unique government function, the lower courts must look to "like circumstances" for analogies of when private citizens would be liable in order to determine the Government's liability. Id. at 46–47. Specifically, the Court reversed the judgment of the Court of Appeals for the Ninth Circuit on the ground that it was inappropriate to make the United States liable for the

---

[3] There is some dispute about whether the Government would even be liable for a citizen's arrest because § 9.51(b) privileges a private person's reasonable use of force during a lawful arrest. TEX. PENAL CODE ANN. § 9.51(b). Here, the district court found that Villafranca committed the crime of resisting arrest. See id. § 38.03. Villafranca argues that under § 38.03 resisting arrest is only a crime when a peace officer's attempted arrest is resisted, and as such would not provide a basis for a lawful citizen's arrest. We need not decide this issue because we conclude that the federal agents can invoke the peace officer privilege under § 9.51(a).

[4] Villafranca also relies on the Ninth Circuit's application of Olson in Tekle v. United States, 511 F.3d 839 (9th Cir. 2007). Villafranca's reliance on Tekle is misplaced since two of the three opinions rendered by the Ninth Circuit in that case actually support the conclusion that the Government can invoke state law enforcement privileges. Tekle, 511 F.3d at 857 (Fisher, J. concurring) ("Olson could be read to support the conclusion that law enforcement privileges should not be recognized in FTCA suits. . . . [However] the FTCA . . . does not clearly foreclose their availability [and the court should not] reach out to construe Olson [as foreclosing those privileges.]"); see also id. at 861 (Kleinfeld, J. concurring) (arguing that the plaintiff had not preserved his FTCA claims on appeal, but if he had, Judge Fisher's concurrence was right on the merits). But see id. at 852–54 (Tashima, J.) (holding that the Government was to be treated as a private person and a genuine issue of material fact existed as to whether the agents exceeded their ability to arrest because "[w]hile a law enforcement officer may arrest a person without a warrant . . . [given] probable cause . . . a private person may only arrest someone for a [crime] . . . committed . . . in his presence[.]"). On remand, the district court found that law enforcement privileges applied. Tekle v. United States, No. CV-01-3894, 2009 WL 1303357, at *12 (C.D. Cal. May 8, 2009).

negligent mine inspections solely because state law would make a state or municipal entity liable for similar negligence. Instead, the Court held that the lower courts should look to similar private person analogies rather than exact state or municipal entity analogies to determine the Government's liability. Id. at 47.

The district court below acknowledged Villafranca's "private person" argument but did not expressly resolve the issue of whether the Government was to be treated as a private person for purposes of § 9.51. Instead, the district court found that "the Government is not liable for assault where, as here, its law enforcement agents cause injury while using reasonable force to make a lawful arrest for a crime actually committed[,]" and did not complete the next step of the analysis. Today, we hold that the agents can invoke the Texas statutory privilege.

We have previously held that the United States "was entitled to claim section 9.51 as a defense to civil liability under the FTCA" in the context of a Bivens[5] suit. Saldaña, 2001 WL 85862, at *1 (affirming the district court's judgment that the Government can invoke a privilege under § 9.51(c) concerning use of deadly force by an officer). However, in Sutton v. United States, we declined to determine "whether incorporation of state law implies the adoption of limitations such as a privilege defense applicable to law enforcement officers [in FTCA actions]." 819 F.2d 1289, 1300 n.21 (5th Cir. 1987).[6]

---

[5] Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

[6] In Crider v. United States, 885 F.2d 294 (5th Cir. 1989), we considered whether federal park rangers had a duty to detain a drunk driver who later injured the plaintiff in a car crash. We agreed with the Ninth Circuit that "[r]eference to [state] law, setting forth the liability of state and municipal entities to establish the [G]overnment's liability under the FTCA, is both necessary and proper"—a reference that is in tension with Olson. Compare Crider, 885 F.2d at 296 with Olson, 546 U.S. at 46 ("the [FTCA] requires a court to look to the state-law liability of private entities, not to that of public entities."). However, we then held, consistent with Olson, that we "must disregard state rules of sovereign or official immunity in analyzing the

While we have not directly addressed this issue, district courts in this circuit have held that federal law enforcement agents can invoke state law enforcement privileges. In Garza v. United States, the district court concluded that the Government could invoke the Texas law enforcement privilege as a defense to the plaintiff's assault claim in an FTCA case. 881 F. Supp. 1103, 1106 (S.D. Tex. 1995) (Kazen, J.). The district court in Garza reasoned that while immunity defenses were unavailable following the reasoning of Indian Towing Co. v. United States, 350 U.S. 61 (1955), the Government may invoke law enforcement privileges:

> The distinction turns on the qualitative difference between an immunity and a privilege. Unlike an immunity, which affects liability but does not diminish the tort, a privilege protects the actor from a finding of tortious conduct.

> Put another way, an immunity insulates an individual from liability for public policy reasons, even when that individual has engaged in conduct that would otherwise be actionable. By contrast, a privilege recognizes that, because of the nature of their duties, some public officers may perform certain acts that might otherwise be tortious if committed by someone not having those duties.

Garza, 881 F. Supp. at 1106 (quotation marks and citations omitted); see also Andrade v. United States, 116 F. Supp. 2d 778, 787–89 (W.D. Tex. 2000) (holding that the plaintiff's FTCA claims failed because the FBI agents were privileged to use reasonable force under Texas law); McElroy v. United States, 861 F. Supp. 585, 595 (W.D. Tex. 1994) (concluding that the plaintiff's FTCA assault claim failed because the officer was privileged to use reasonable force under § 9.51(a)).

We find the Garza court's distinction between immunities and privileges

---

scope of FTCA liability, because these conflict with Congress's analogy to 'private person' liability . . . ." Crider, 885 F.2d at 296. Based on this holding, we determined that because neither a state law enforcement officer nor a private person would have had a duty to the plaintiff to detain a drunk driver, the park rangers also had no such duty, and thus the Government was not liable under the FTCA. Id. at 300.

persuasive. Olson, to the extent it is applicable in the law enforcement context, does not limit the Government's ability to invoke the Texas statutory privilege here. Section 9.51(a) does not immunize state or municipal entities from liability, but rather it privileges the conduct of all peace officers who use reasonable force to effect an arrest. See Petta, 44 S.W.3d at 579–80. Since Olson's holding concerns only whether state or municipal entity liability is an appropriate analogy for the Government's liability, we determine that it does not preclude the Government's invocation of § 9.51(a) here.

Because Texas law provides a statutory civil privilege defense under § 9.51(a) for all "peace officers," we hold that the Government can invoke this privilege for its law enforcement officers as well. To hold otherwise would lead to the absurd result that all federal arrests would subject the Government to tort liability under the FTCA absent a finding that the Government's actions conformed with the state's specific law regarding "private person" arrests. Instead, the appropriate "private person" analogy here is whether an individual, acting under color of state law, would be personally liable for assault in similar circumstances. Because that individual could invoke the § 9.51 privilege to avoid personal liability under Texas law, the Government can also invoke that privilege to avoid liability here. See Petta, 44 S.W.3d at 579–80; see also Saldaña, 2001 WL 85862, at *1.

### 3. Were the Requirements of § 9.51(a) Satisfied?

Given that the Government can invoke the § 9.51(a) privilege, we must then ask whether the agents' conduct conformed to the requirements of § 9.51(a). The district court's findings, which are not clearly erroneous, indicate that the agents were (1) "peace officers"[7] who (2) identified themselves as

---

[7] "Peace officer" is defined by Texas Penal Code § 1.07 and includes "a person elected, employed, or appointed as a peace officer under Article 2.12, Code of Criminal Procedure . . . or other law." TEX. PENAL CODE ANN. § 1.07(36); see also Villafranca, No. 3:06-CV-0806, slip op. at 1 ¶ 2.

officers when they entered the Salon,[8] (3) reasonably believed the arrest of Villafranca was lawful based on his resistance,[9] (4) made clear their purpose to arrest Villafranca,[10] and (5) used force reasonably believed to be immediately necessary to make the arrest.[11] See also Fraire v. City of Arlington, 957 F.2d 1268, 1276–77 (5th Cir. 1992) (holding that a police officer was not liable for use of excessive force since § 9.51 requirements were satisfied); Hinojosa, 834 F.2d at 1231 (concluding that a state police officer is allowed to use force in "necessary" situations under § 9.51); Petta, 44 S.W.3d at 579 ("A police officer is privileged to use force to the degree he reasonably believes is necessary to make an arrest, taking care that the force used is commensurate with the necessity."). Accordingly, we find that the DEA agents' actions were privileged under § 9.51(a), and thus the agents did not commit a tortious assault under Texas law. Therefore, the Government is not liable on Villafranca's assault claim.

## B. The Proximate Cause of Villafranca's Injuries

The district court below found that the DEA agents' negligence, in failing to devise a plan to release the patrons, was not the proximate cause of

---

[8] See Villafranca, No. 3:06-CV-0806, slip op. at 2 ¶ 9.

[9] See id. at 3 ¶ 13. Villafranca argues that the agents' initial detention of the patrons and the agent's initial attempt to search Villafranca were unlawful. We find that these arguments lack merit. The Supreme Court has held that officers may "detain an occupant of the place to be searched" and may use "reasonable force to effectuate the detention." Muehler v. Mena, 544 U.S. 93, 98–99 (2005) (holding that a two-hour detention in handcuffs of a person present at an address being searched for weapons related to gang activity was reasonable). Cf. Williams v. Kaufman County, 352 F.3d 994, 1007 (5th Cir. 2003) (holding that detaining club patrons in handcuffs for three hours after subjecting them to strip searches and warrant checks was unlawful). Here, the record shows that Villafranca was released within an hour and was the only patron arrested and handcuffed. In our view, these facts show that the district court's determinations regarding the lawfulness of the agents' actions are correct.

[10] See Villafranca, No. 3:06-CV-0806, slip op. at 2 ¶ 13.

[11] See id. at 3 ¶ 14.

Villafranca's injury. Specifically, the district court found:

15. Any injuries to Villafranca occurred after [his resistance].

16. [Villafranca's resistance] was a new and independent cause, an act of separate and independent agency, not reasonably foreseeable, that destroyed the causal connection between the DEA agents' unreasonable search plan and Villafranca's injuries.

17. [Villafranca's resistance] was the sole proximate cause of Villafranca's injuries.

18. The DEA agents' unreasonable search plan did not cause Villafranca's injury.

Villafranca, No. 3:06-CV-0806, slip op. at 3 ¶¶ 15–18. Because we hold that the district court's finding that the agents' alleged negligence was not the proximate cause of Villafranca's injuries is not clearly erroneous, we need not re-visit the district court's determination that the search plan was unreasonable.

Villafranca now argues that a "new and independent cause" must arise from the conduct of an outside force and not from his actions in the incident. Thus, Villafranca urges that the district court's findings on proximate cause were incorrect since the agents misconstrued his resistance. See Omega Contracting, Inc. v. Torres, 191 S.W.3d 828, 844 (Tex. App.—Fort Worth 2006, no pet.) (holding that "new and independent cause contemplates that an independent force, rather than the alleged negligent acts of the parties, was responsible for the plaintiff's injuries").

The Government does not challenge this specific argument. Instead, it counters that the district court's findings that the negligent planning did not proximately cause Villafranca's harm and that Villafranca's resistance was the sole proximate cause of his harm are sufficient to sustain the district court's judgment. We agree.

In Texas, proximate cause is composed of two elements: foreseeability and cause in fact. IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason, 143 S.W.3d 794, 798 (Tex. 2004). "Foreseeability means the actor, as a person of

ordinary intelligence, should have anticipated the dangers his negligent act created for others." Boggs v. Bottomless Pitt Cooking Team, 25 S.W.3d 818, 823 (Tex. App.—Houston [14th Dist.] 2000, no pet.). "Cause in fact is established when the act or omission was a substantial factor in bringing about the injuries, and without it, the harm would not have occurred." IHS, 143 S.W.3d at 799.

In view of the record as a whole, the district court did not commit clear error in finding both that Villafranca's resistance was the proximate cause of his injuries and that the agents' alleged negligence did not proximately cause his injuries. While better planning may have reduced the amount of time that Villafranca had to wait in the Salon, better planning would not have made Villafranca obey agents' orders to end his cell phone conversation, remain seated, and submit to a search. As the Government correctly points out, because Villafranca's defiance occurred so soon after the agents entered, even a non-negligent plan would not have allowed patrons to leave before Villafranca disobeyed the agents' commands and resisted arrest.

Villafranca also attempts to frame all of the district court's causation findings as relying upon the allegedly erroneous "new and independent cause determination." As such, Villafranca contends that the district court's findings on other proximate causation theories were tainted by this error. We find this argument unpersuasive. At trial, the district court had before it all theories of proximate causation. The district court then made separate factual findings on each theory. Because the district court made separate findings, we determine that the district court properly considered each theory of causation.

Accordingly, the district court's relevant findings are not clearly erroneous, and we need not determine whether Villafranca's actions actually constitute a "new and independent cause." Because the Government's alleged negligence did not proximately cause Villafranca's injuries, his negligence claim fails.

III. CONCLUSION

12

For the foregoing reasons, we AFFIRM the judgment of the district court.