ACCEPTED
04-14-00899-cv
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
4/29/2015 3:15:15 PM
KEITH HOTTLE
CLERK

No. 04-14-00899-CV

Court of Appeals, Fourth District
San Antonio, Texas

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS

04/29/2015 3:15:15 PM

KEITH E. HOTTLE
Clerk

Laura Leticia Zepeda Vasquez, individually and behalf of the Estate of Jose Abraham Vasquez, Jr.

*Appellant*

vs.

Legend Natural Gas III, LP, *et al.*

*Appellees*

Appeal from the 81st Judicial District Court, LaSalle County, Texas
No. 14-07-00119-CVL

BRIEF OF APPELLEES

**J. Joseph Vale** (jvale@atlashall.com)
State Bar No. 24084003
**E. Michael Rodriguez** (mrodriguez@atlashall.com)
State Bar No. 00791553
**Erin A. Hudson** (ehudson@atlashall.com)
State Bar No. 24059978
**ATLAS, HALL & RODRIGUEZ, LLP**
818 Pecan/P.O. Box 3725
McAllen, Texas 78501
(956) 682-5501 (phone)
(956) 686-6109 (facsimile)

Attorneys for Appellees
Enterprise Products Holdings LLC and Enterprise Products Co.

April 29, 2015

## Identity of Parties and Counsel

Enterprise Products Holdings, LLC, and Enterprise Products Company file this supplement to the plaintiff's Identity of Parties and Counsel as follows, pursuant to Rule 38.2(a)(1)(A) of the Texas Rules of Appellate Procedure:

| Party designation | Party name | Attorney/address |
|---|---|---|
| Defendants/appellees | Enterprise Products Holdings LLC and Enterprise Products Co. | **J. Joseph Vale (appellate)** jvale@atlashall.com **E. Michael Rodriguez** mrodriguez@atlashall.com **Erin A. Hudson** ehudson@atlashall.com ATLAS, HALL & RODRIGUEZ, LLP 818 Pecan/P.O. Box 3725 McAllen, Texas 78501 |

# Table of Contents

Identity of Parties and Counsel ................................................................2

Index of Authorities ..............................................................................5

Statement Regarding Oral Argument .........................................................8

Issue Presented ....................................................................................9

Statement of Facts ...............................................................................11

    1.    *Lawsuit, severance, and dismissal* .........................................11
    2.    *Vasquez's allegations* .......................................................11
        2.1.  *Defendants* ...........................................................12
        2.2.  *Krueger Road* ........................................................12
        2.3.  *Defendants' knowledge prior to operating the wells* ...............12
        2.4.  *Defendants' use of Krueger Road* ................................13
        2.5.  *The accident* ..........................................................13
        2.6.  *Negligence theory* ...................................................14

Summary of the Argument.......................................................................15

Standard of Review ..............................................................................16

Argument...........................................................................................17

    I.    Vasquez's claim has no basis in law. ..........................................17
        A.   Rule 91a is an appropriate vehicle for dismissal when a defendant owes no duty as a matter of law. ............................17
        B.   The defendants owed no duty to act to prevent harm to Jose Vasquez as a matter of law. ...........................................18
            i.    The defendants did not actively create a dangerous situation.......................................................................19
            ii.   The defendants have no legal ability to comply with Vasquez's proposed duty.......................................26
            iii.  Factors of foreseeability and social utility dictate that no duty be imposed on those who contribute to gradual degradation of public roads. ............................28

II.     Conclusion ................................................................................. 29

Prayer ............................................................................................... 30

Certificate of Rule 9.4(i) Compliance ............................................. 31

Certificate of Service ....................................................................... 32

Appendices ........................................................................................ 34

4

# Index of Authorities

Cases

*Abalos v. Oil Dev. Co. of Tex.*,
    544 S.W.2d 627 (Tex. 1976) ................................................................. 20, 22

*Adams v. Grapotte*,
    69 S.W.2d 460 (Tex. Civ. App.—Eastland 1934) ..................................21

*Amaro v. Wilson Cnty.*,
    398 S.W.3d 780 (Tex. App.—San Antonio 2011, no pet.) ...................27

*Barras v. Monsanto Co.*,
    831 S.W.2d 859 (Tex. App.—Houston [14th Dist.] 1992, writ denied) ..............19

*Bird v. W.C.W.*,
    868 S.W.2d 767 (Tex. 1994) .................................................................29

*Buchanan v. Rose*,
    159 S.W.2d 109 (Tex. 1942) .......................... 19, 20, 22, 23, 25, 28, 29

*City of San Antonio v. City of Boerne*,
    111 S.W.3d 22 (Tex. 2003) ..................................................................27

*Courville v. Home Transp. Co.*,
    497 S.W.2d 788 (Tex. App.—Beaumont 1973, writ ref'd n.r.e.) ................. 20, 23

*DeVoll v. Demonbreun*,
    No. 04-14-00116-CV, 2014 Tex. App. LEXIS 13865 (Tex. App.—San
    Antonio Dec. 31, 2014, no pet. h.) .......................................11, 16, 18

*Dudley & Orr v. Jacobs*,
    257 S.W. 315 (Tex. Civ. App. 1923, writ dism'd) ................................25

*Elliott v. State*,
    818 S.W.2d 71 (Tex. App.—San Antonio 1991, writ denied) ..............22

*Gatten v. McCarley*,
    391 S.W.3d 669 (Tex. App.—Dallas 2013, no pet.) ............................17

*Grapotte v. Adams*,
111 S.W.2d 690 (Tex. 1938) ....................................................... 20, 21, 23, 28, 29

*Kehler v. Eudaly*,
933 S.W.2d 321 (Tex. App.—Fort Worth 1996, writ denied) ............................18

*Kroger Co. v. Elwood*,
197 S.W.3d 793 (Tex. 2006) (per curiam) ........................................................19

*Naumann v. Windsor Gypsum, Inc.*,
749 S.W.2d 189 (Tex. App.—San Antonio 1988, writ denied)..........................22

*New Tex. Auto Auction Servs., L.P. v. De Hernandez*,
249 S.W.3d 400 (Tex. 2008)..............................................................................22

*Rocha v. Faltys*,
69 S.W.3d 315 (Tex. App.—Austin 2002, no pet.)...........................................22

*SmithKline Beecham Corp. v. Doe*,
903 S.W.2d 347 (Tex. 1995) ....................................................................... 22, 24

Statutes
Tex. R. Civ. P. 91a .........................................................................................17

Tex. Transp. Code Ann. § 251.003......................................................................26

Tex. Transp. Code Ann. § 251.016......................................................................26

Tex. Transp. Code Ann. § 251.153......................................................................25

Tex. Transp. Code Ann. § 621.301......................................................................25

Other Authorities
Tex. Att'y Gen. Op. No. GA-0430 (2006)............................................................28

Tex. Att'y Gen. Op. No. GA-0693 (2009)....................................................... 27, 28

Tex. Att'y Gen. Op. No. GA-1013 (2013)............................................................27

Tex. Att'y Gen. Op. No. JM-1241 (1990) ............................................................28

Timothy Patton, *Motions to Dismiss Under Texas Rule 91a: Practice, Procedure and Review*, 33 Rev. Litig. 469 (2014)................................................................18

## Statement Regarding Oral Argument

This relatively simple case involves the plaintiff's failure to allege a claim for negligence as a matter of law. No complicated questions of law or fact are presented. For this reason, the Enterprise Defendants[1] do not believe oral argument will be helpful to the Court. If, however, the Court decides to grant oral argument, the Enterprise Defendants will attend and present argument.

---

[1] The "Enterprise Defendants" are Enterprise Products Holdings LLC and Enterprise Products Co.

## Issue Presented

1. Did the trial court properly rule that the defendants owed no duty to act to prevent harm to others when the defendants allegedly caused the condition of a public road to degrade over time by driving on the road? *See* Argument § I.

No. 04-14-00899-CV

Court of Appeals, Fourth District
San Antonio, Texas

---

Laura Leticia Zepeda Vasquez, individually and behalf of the Estate of Jose
Abraham Vasquez, Jr.

*Appellant*

vs.

Legend Natural Gas III, LP, *et al.*

*Appellees*

---

Appeal from the 81st Judicial District Court, LaSalle County, Texas
No. 14-07-00119-CVL

---

## BRIEF OF APPELLEES

Enterprise Products Holdings, LLC, and Enterprise Products Company, appellees herein, file this Brief pursuant to Rule 38 of the Texas Rules of Appellate Procedure. Parties will be referred to as in the trial court or by name. References to the Clerk's Record will be to CR{page}, and references to the Supplemental Clerk's Record will be to SuppCR{page}. References to the Appendices will be to App{tab}. The Reporter's Record is not cited.

## Statement of Facts

1. *Lawsuit, severance, and dismissal.* On July 21, 2014, Laura Vasquez filed a lawsuit against several defendants[2] claiming that the defendants had degraded the condition of a public road over time and that the road's condition had caused the death of Jose Vasquez. CR1, 4–6 (original petition).[3] The trial court granted some defendants' Rule 91a motions to dismiss Vasquez's claims concerning the condition of the road and severed Vasquez's remaining claim concerning a vehicle allegedly present at the time of Vasquez's death. SuppCR7 (order).[4] In the written order, the trial court stated that Vasquez's negligence theory had no basis in law. SuppCR7–8. This appeal followed. SuppCR1.[5]

2. *Vasquez's allegations.* The question on appeal is whether the defendants owed a duty to affirmatively act to prevent harm to users of a public road when the defendants allegedly caused the condition of the road to degrade over time. *See* Appellant's Brief 4. To answer this question, the Court must accept as true the factual allegations in the plaintiff's petition. *DeVoll v.*

---

[2] Lewis Energy Group, LP, Lewis Petro Properties, Inc., Rosetta Resources Operating LP, Legend Natural Gas III, LP, Legend Natural Gas, LLC, Virtex Holdings, LLP, Virtex Operating Company, Inc., Enterprise Products Holdings LLC, Enterprise Products Company, and XTO Energy, Inc. CR1, 79.

[3] *See also* CR79 (first amended petition – live pleading).

[4] Though only some defendants filed motions to dismiss, the trial court ruled that the dismissal was applicable to all defendants. SuppCR7–8. Vasquez has not challenged the order's application to the non-movant defendants on appeal.

[5] Vasquez prematurely filed a notice of appeal from a prior order. CR147 (order), 159 (notice of appeal). Vasquez amended her notice of appeal after the trial court signed a new order that was final and appealable. SuppCR1 (amended notice of appeal), 7 (new order).

*Demonbreun*, No. 04-14-00116-CV, 2014 Tex. App. LEXIS 13865, at *4 (Tex. App.—San Antonio Dec. 31, 2014, no pet. h.);   *see also, infra*, Standard of Review.   Vasquez's First Amended Petition (the live pleading) alleges the following facts.  CR79.[6]

      2.1.   *Defendants*.  Vasquez alleges that the defendants are owners or operators of oil or gas wells in the area around Krueger Road in La Salle County.  CR81.   However, Enterprise Products Holdings LLC and Enterprise Products Company deny owning or operating any oil or gas wells in this area.

      2.2.   *Krueger Road*.  Krueger Road is a public road both in the sense that it is open to the public's use and that it is maintained and repaired by La Salle County using public funds.  CR81–82.

      2.3.   *Defendants' knowledge prior to operating the wells*.  According to Vasquez, before the defendants' began operating their wells, the defendants knew several facts concerning how much they would need to use Krueger Road to operate the wells.  CR81–82.  Specifically, the defendants allegedly knew:

- "it takes almost 1,200 loaded trucks to bring one oil or gas well into production,"
- "over 350 trucks are required per year for maintenance of an oil or gas well,"
- "almost 1,000 trucks are needed every five years to re-fracture a well,"

---

[6] The defendants generally deny the allegations in this pleading and assert other defenses.  CR34 (Legend defendants' original answer), 42 (Enterprise defendants' original answer), 51 (Lewis defendants' original answer and counterclaim), 56 (XTO's original answer), 93 (Virtex Operating Company, Inc.'s first amended original answer), 105 (Virtex Holdings, LLP's first amended original answer), 115 (Rosetta's first amended original answer).

- "the service life of roads in areas around wells is reduced more than 30 percent a year due to natural gas well operations," and
- "infrastructure costs for counties to repair roads near wells far outpace a county's ability to raise revenue from local property tax, even with the increasing tax base created by the wells."

CR81–82.

2.4. *Defendants' use of Krueger Road.* Vasquez alleges that the defendants "created a dangerous condition for all drivers on Krueger Road" by sending "numerous loaded and unloaded trucks up and down Krueger Road." CR82. The defendants were aware that the county was not able to repair the road to match the defendants' use of it. CR82. At one point, Krueger Road was a safe, paved road for the public. CR83. Over time, the road has degraded into a dirt road with potholes, bumps, crevices, and no markings left to determine the proper lanes of travel. CR83. The defendants' vehicles travel on Krueger Road "at a high rate of speed" in "heavy and *maybe* overweight vehicles." CR83 (emphasis added). The defendants did not fix the road and/or provide any warnings to drivers on Krueger Road. CR82.

2.5. *The accident.* On August 4, 2012, Jose Vasquez tragically died in an automobile accident on Krueger Road. CR82. According to Laura Vasquez, Jose lost sight of the road due to a cloud of dust. CR82. Laura alleges that the dust

13

was caused, in part, by the dangerous condition of the road. CR82.[7] Unable to see where the road was, Jose drove into a ditch and flipped his vehicle. CR82.

2.6. *Negligence theory*. Vasquez admits that the defendants' use of the road was lawful except in some possible instances of negligence. CR83. Vasquez alleges that the defendants' trucks travel at a "high rate of speed" but does not claim that they were driven unlawfully fast. CR83, 85.[8] Vasquez further alleges that the trucks were heavy but only notes that it is possible that some of the trucks were "maybe" or "possibly" overweight. CR83, 85. Nonetheless, Vasquez seeks to hold the defendants liable under a negligence theory claiming that they created a dangerous condition without fixing the road, attempting to prevent injuries, or providing any warnings. CR83, 85. Vasquez also pleads gross negligence. CR86.

---

[7] Laura also attributes the dust to the alleged negligent driving of a Lewis Energy truck, but the trial court severed this theory into a separate lawsuit. CR82, SuppCR8.

[8] Contrary to Vasquez's brief, Vasquez's sole allegation of "reckless" driving occurred in the severed cause involving the Lewis Energy truck allegedly at the scene of the accident. CR84; Appellant's Brief 5 (citing CR83 for the term "recklessly" where the term "reckless" only appears on CR84 concerning the Lewis Energy truck). That theory is not subject to this appeal.

## Summary of the Argument

As the basis for imposing a duty on the defendants, Vasquez argues that the defendants created a dangerous situation. This is simply not true. Mere contribution to the wear and tear of a public road by lawful use with some possibly overweight vehicles does not constitute active creation of a dangerous situation under Texas law. *See* Argument § I.B.i.

Moreover, the defendants cannot even comply with Vasquez's proposed duty to repair or warn. The county undisputedly has control of maintenance of the road and of posting warning signs on the roadside. The defendants' inability to comply demonstrates why the trial court correctly held that the defendants owed no duty as a matter of law. *See* Argument § I.B.ii.

Finally, the law cannot impose a duty to repair or warn on those who contribute to the gradual degradation of the road's condition because such a duty would expose the public to too much liability for driving. Moreover, it is not foreseeable that harm will follow merely by driving on the road and contributing to the road's wear and tear. *See* Argument § I.B.iii.

For these reasons, the trial court properly dismissed this case as having no basis in law, and this Court should affirm the trial court's judgment.

## Standard of Review

A trial court's ruling on a Rule 91a motion to dismiss presents a question of law that is subject to *de novo* review on appeal, based on the allegations of the live petition in question and any attachments thereto. *DeVoll v. Demonbreun*, No. 04-14-00116-CV, 2014 Tex. App. LEXIS 13865, at *4 (Tex. App.—San Antonio Dec. 31, 2014, no pet. h.).

**Argument**

## I. Vasquez's claim has no basis in law.

The sole question on appeal is whether the defendants had a duty to take actions to prevent harm to Jose Vasquez on Krueger Road. Appellant's Brief 4. They owed no such duty, and as a result, the trial court properly dismissed the plaintiff's claim under Rule 91a.

### A. Rule 91a is an appropriate vehicle for dismissal when a defendant owes no duty as a matter of law.

Implemented in 2013, Rule 91a permits a court to dismiss a cause of action at an early stage in a lawsuit on the pleadings and without evidence for having no basis in law or in fact. *See* Tex. R. Civ. P. 91a. In the present case, the trial court dismissed the case under Rule 91a for having no basis in law. SuppCR7–8. By rule, a claim has no basis in law "if the allegations, taken as true, together with references reasonably drawn from them, do not entitle the claimant to the relief sought." Tex. R. Civ. P. 91a.1.

Though Rule 91a is fairly new to Texas civil procedure, Texas courts have long had the power to dismiss negligence claims on the pleadings when the defendant owed no duty to the plaintiff as a matter of law. *See, e.g.*, *Gatten v. McCarley*, 391 S.W.3d 669, 673–77 (Tex. App.—Dallas 2013, no pet.) (dismissing negligence claim for no duty via special exception to pleadings); *Kehler v. Eudaly*,

17

933 S.W.2d 321, 325, 332 (Tex. App.—Fort Worth 1996, writ denied) (dismissing negligence claims for no duty via summary judgment on the pleadings). Since Rule 91a presents a question of law, cases that find no duty as a matter of law are instructive for the present case's Rule 91a analysis. *See DeVoll v. Demonbreun*, No. 04-14-00116-CV, 2014 Tex. App. LEXIS 13865, at *4 (Tex. App.—San Antonio Dec. 31, 2014, no pet. h.) (explaining that Rule 91a presents a question of law); *see also* Timothy Patton, *Motions to Dismiss Under Texas Rule 91a: Practice, Procedure and Review*, 33 Rev. Litig. 469, 482–86 (2014)/TabE (arguing that summary judgment on the pleadings and special exceptions cases should be applicable to Rule 91a dismissal for no basis in law).[9]

**B.     The defendants owed no duty to act to prevent harm to Jose Vasquez as a matter of law.**

To prove her negligence claim, Vasquez must show that the defendants had a duty to take actions to prevent harm to Jose Vasquez. *Kroger Co. v. Elwood*, 197

---

[9] Patton explains:

> Actually, there's no need to search for an already-existing rule or statute using the exact phrase "no basis in law" to determine the meaning of "no basis in law" under Rule 91a. For decades, Texas trial and appellate courts have resolved cases on the pleadings by deciding that the plaintiff's petition did not state a valid cause of action under Texas law. They have done so by using two procedures: special exceptions and motions for summary judgment.

*Supra*, 33 Rev. Litig. 469, 482.

18

S.W.3d 793, 794 (Tex. 2006) (per curiam).[10]  Whether a duty exists is a threshold

inquiry and a question of law; liability cannot be imposed if no duty exists.  *Id.*

The defendants in the present case had no duty to act as a matter of law because

(1) the defendants did not actively create a dangerous situation, (2) the defendants

do not even have the legal ability to comply with the proposed duty, and

(3) foreseeability and social utility factors dictate that no duty be imposed to

protect others from gradual degradation of a public roadway.  As a result, the trial

court's dismissal of the plaintiff's cause of action must be affirmed.

### i.  The defendants did not actively create a dangerous situation.

The law does not generally impose a duty on parties to take affirmative

action to prevent harm to others.  *See Buchanan v. Rose*, 159 S.W.2d 109, 110

(Tex. 1942); *see also Barras v. Monsanto Co.*, 831 S.W.2d 859, 865 (Tex. App.—

Houston [14th Dist.] 1992, writ denied) ("Mere knowledge of a dangerous

situation imposes only a moral duty to warn or render aid, not a legal duty").  The

Supreme Court has explained:

> [I]t may be said generally, as a matter of law, that a mere bystander
> who did not create the dangerous situation is not required to become
> the good Samaritan and prevent injury to others.  Under the last rule, a
> bystander may watch a blind man or a child walk over a precipice, and
> yet he is not required to give warning.  He may stand on the bank of a

---

[10] To establish negligence, Vasquez must establish a duty, a breach of that duty, and damages proximately caused by the breach.  *Elwood*, 197 S.W.3d at 794.

19

> stream and see a man drowning, and although he holds in his hand a rope that could be used to rescue the man, yet he is not required to give assistance. He may owe a moral duty to warn the blind man or to assist the drowning man, but being a mere bystander, and in nowise responsible for the dangerous situation, he owes no legal duty to render assistance.

*Buchanan*, 159 S.W.2d at 110. As Vasquez recognizes, an exception exists when a party, either through negligence or not, creates a dangerous situation. *See id.*; Appellant's Brief 9–10. Under this exception, however, "creation" does not merely entail being an actor in a causal chain that results in a dangerous situation. *See Abalos v. Oil Dev. Co. of Tex.*, 544 S.W.2d 627, 632–33 (Tex. 1976) (explaining that a driver may technically cause a dangerous situation on a public road—"in the sense that he had something to do with the danger"—without *creating* the dangerous situation in a sense that would impose a duty to prevent harm to others); *Buchanan*, 159 S.W.2d at 110 (holding driver did not create a dangerous situation when bridge fell as his vehicle passed over it); *Courville v. Home Transp. Co.*, 497 S.W.2d 788, 792 (Tex. App.—Beaumont 1973, writ ref'd n.r.e.) (explaining that it is not sufficient that the dangerous condition actually resulted from the defendant's acts). The Supreme Court has provided two helpful examples of this exception on public roadways: *Grapotte* and *Buchanan*. *Grapotte v. Adams*, 111 S.W.2d 690 (Tex. 1938); *Buchanan*, 159 S.W.2d 109.

In *Grapotte*, the defendant operated a car storage garage that required hundreds of vehicles to pass over a public sidewalk to enter the defendant's

facility. 111 S.W.2d at 691. As a result of the vehicles driving over the sidewalk, the sidewalk had become worn and formed a hole or depression, and the defendant was aware of this problem. *Id.* Under Texas law, a public sidewalk is a part of the public street, and the government bears the responsibility for keeping it in a reasonably safe condition. *Id.* A plaintiff tripped over the depressed portion of the sidewalk in front of the defendant's business and suffered injuries. *Id.* The Supreme Court held that the defendant had no duty to affirmatively act to prevent harm to people walking on the sidewalk even though the defendant's business was technically a cause of the dangerous situation. *Id.* at 691–92. The Supreme Court explained the defendant did nothing unusual, wrongful, or unlawful to require the imposition of a duty. *Id.* Specifically, the Court explained that the degree or quantity of cars crossing the sidewalk had nothing to do with whether the defendant had used the sidewalk in such a way as to create a dangerous situation. *Id.* at 692. The Court adopted the opinion of the court of appeals in that case as its own, and the court of appeals had explained that the defendant would have had no liability if the same situation had occurred in the street instead of a sidewalk. *Id.*; *Adams v. Grapotte*, 69 S.W.2d 460, 462 (Tex. Civ. App.—Eastland 1934).

In *Buchanan*, a truck driver non-negligently drove across a public bridge without the truck being overloaded, and the bridge fell below the embankment at one end as the truck's rear wheels crushed it. *Buchanan v. Rose*, 159 S.W.2d 109,

21

109 (Tex. 1942). A witness informed the truck driver of the damage, but the truck driver did nothing to warn others of the dangerous situation. *Id.* Several days later, the plaintiffs were injured when they crashed attempting to drive across the damaged bridge. *Id.* Citing *Grapotte* for support, the Supreme Court held that the truck driver owed no duty to act to prevent harm to the plaintiffs. *Id.* at 110–11. Specifically, though the driver's truck had helped cause the bridge to become dangerous, the Court held that the driver did not create the dangerous situation. *Id.* As the Court explained, to impose such a duty on the truck driver would be to make travel on public roadways too hazardous from the standpoint of public liability. *Id.* at 110.[11]

Cases after *Buchanan* and *Grapotte* emphasize that these cases turn on whether the defendant took an active role in creating the danger.[12] *Buchanan* gave

---

[11] In the Court's words, "It would be carrying the matter too far to say that one must give notice of every known defect in a road naturally resulting from his normal and legitimate use thereof. To so hold would make the use of the highways too hazardous from the standpoint of public liability." *Buchanan*, 159 S.W.2d at 110.

[12] *See, e.g.*, *New Tex. Auto Auction Servs., L.P. v. De Hernandez*, 249 S.W.3d 400, 407 (Tex. 2008) (holding that auctioneer did not create dangerous situation by selling defective vehicle); *SmithKline Beecham Corp. v. Doe*, 903 S.W.2d 347, 353 (Tex. 1995) (holding that drug testing company did not create dangerous situation by failing to warn person that ingesting substance would trigger positive drug test); *Abalos v. Oil Dev. Co. of Tex.*, 544 S.W.2d 627, 632–33 (Tex. 1976) (holding that defendant did not create dangerous situation when defendant did not control machine that injured plaintiff); *Elliott v. State*, 818 S.W.2d 71, 75 (Tex. App.—San Antonio 1991, writ denied) (holding that defendant did not create a dangerous situation by failing to provide life jacket to plaintiff when plaintiff had none on his boat); *Naumann v. Windsor Gypsum, Inc.*, 749 S.W.2d 189, 192 (Tex. App.—San Antonio 1988, writ denied) (holding that defendant did not create dangerous situation by building plant in a way that required tractor trailers to block oncoming traffic when exiting plant on public two-lane road); *Rocha v. Faltys*, 69 S.W.3d 315, 320–22 (Tex. App.—Austin 2002, no pet.) (holding that defendant did not

22

two examples of what could create a dangerous situation and thus entail a duty to warn: (1) excavating on or near a roadway or (2) placing an obstruction on the road. *Buchanan*, 159 S.W.2d at 110.

The present case requires the same result as in *Grapotte* and *Buchanan* because the defendants did not actively create the dangerous condition. Whereas *Grapotte*'s defendant had vehicles driven over a public sidewalk, the present case's defendants drove their vehicles on a public road. *Grapotte v. Adams*, 111 S.W.2d 690, 691–92 (Tex. 1938); CR81–82. As in *Grapotte*, the subsequent degradation of that road over time does not give rise to a duty even if the road becomes dangerous for other users, regardless of the number of vehicles driven on the road. *See Grapotte*, 111 S.W.2d at 691–92. *Buchanan* confirms that non-negligent use of a road does not result in a duty to take affirmative action to prevent the degraded road's condition from harming others, even if the defendant is aware that the road has become dangerous. *Buchanan*, 159 S.W.2d at 110–11. Vasquez cites *Buchanan* for its rules but ignores *Buchanan*'s application. *See* Appellant's Brief 9–10. Vasquez's statement that *Buchanan* would impose a duty for non-negligent driving on a public road is simply wrong. As a result, the defendants owe no duty to act for non-negligent use of the public road.

---

negligently create dangerous situation when defendant led intoxicated adult plaintiff to top of a cliff and encouraged plaintiff to jump off); *Courville v. Home Transp. Co.*, 497 S.W.2d 788, 791–92 (Tex. App.—Beaumont 1973, writ ref'd n.r.e.) (holding that rear-ended truck had no common law duty to stay on scene and warn others of disabled vehicle on I-10).

As for the alleged possible negligent use of the road, the defendants owed no duty because such use also did not actively create a dangerous situation. Vasquez relies on *Buchanan* for the proposition that negligent creation of a dangerous situation imposes a duty to act to prevent harm resulting from that dangerous situation. Appellants' Brief 9. However, *Buchanan* does not support Vasquez's theory in the present case. *Buchanan* did not involve a negligent driver, and moreover, *Buchanan* did not address a situation where the defendant damaged a public roadway over the span of several years through lawful use and some possible negligent use. *See* 159 S.W.2d at 109–11; CR81–82 (alleging the number of loads and reduction of the road's service life in annual terms). In a subsequent case, the Supreme Court clarified that *Buchanan*'s statements of law were "very general principles" to be applied on a case by case basis. *See SmithKline Beecham Corp. v. Doe*, 903 S.W.2d 347, 353 (Tex. 1995). Vasquez cites no case for the proposition that a gradual degradation of a public roadway by lawful use with some *possibly* overweight trucks is sufficient to impose a duty to act. *See* Appellant's Brief.[13] Instead, Vasquez appears to ask the Court to find that a duty to act exists under a negligence theory *because* the defendants were possibly negligent. *See id.* 9. This circular attempt at avoiding the duty requirement must fail. The mere "possibility" of some overweight trucks on the road over time with

---

[13] Indeed, few of Vasquez's cited cases result in a duty being imposed at all.

24

other appropriately weighted trucks is not sufficient to actively *create* the dangerous situation under the case law that has developed since *Buchanan* described earlier in this section. *Buchanan*, 159 S.W.2d at 110 (requiring that a dangerous situation be "created" even in a case of negligence).

Vasquez provides no authority for her apparent assumption that use of the overweight trucks, if any, constitutes negligence. *See* Appellant's Brief.[14] Even if the use of some overweight trucks is a negligent act, however, these trucks' contribution (along with the use of appropriate weight trucks) to the gradual degradation of the public road's quality does not rise to the level of creating a dangerous situation under *Buchanan* for reasons similar to those stated above in this section with regard to non-negligent use. Importantly, Vasquez does not allege that that the defendants committed a single negligent act to destroy the road, as could be imagined as a variation of *Buchanan*. Perhaps a party could have a legal duty to warn others for negligently destroying a bridge with a single act,[15] but the same cannot be said for wearing down a public road over time by driving properly loaded and some possibly overloaded trucks.

---

[14] Vasquez also has not alleged or cited any authority for any load limit on Krueger Road. *See* Tex. Transp. Code Ann. §§ 251.153/TabC, 621.301/TabD (giving county authority to implement load limits on county roads with concurrence of Texas Department of Transportation).

[15] *See, e.g.*, *Dudley & Orr v. Jacobs*, 257 S.W. 315 (Tex. Civ. App. 1923, writ dism'd) (holding defendant liable for dropping rocks on a road and causing an accident).

Since the defendants did not actively create the dangerous condition, the defendants did not have a duty to affirmatively act, and as a result, the trial court's judgment should be affirmed.

### ii. The defendants have no legal ability to comply with Vasquez's proposed duty.

Vasquez's theory of liability contains another fatal flaw: the defendants cannot legally comply with the proposed duty. Vasquez suggests that the law required the defendants to repair the public road or to provide warning of its danger. Appellant's Brief 10. This proposal bears closer inspection. In Vasquez's view, private parties should be required by common law to repair potholes, repave roads, and repaint lines on *public roadways* when the government fails to maintain them. Appellant's Brief 5 (describing the condition of the road as containing potholes, crevices, and bumps and stating that the road has no markings to determine proper lanes of travel). Vasquez rests her contention on the argument that these parties have contributed to the wear and tear of the road while knowing that the government cannot keep pace with maintenance. *See* Appellant's Brief 9–10. This incredible theory falls flat, however, because the defendants in question do not even have the legal right or ability to repair a public road which is undisputedly under the control of La Salle County. *See* Tex. Transp. Code Ann. §§ 251.003/TabA, .016/TabB (expressly giving counties "general control" of their

26

public roads, including authority to maintain and repair them); *Amaro v. Wilson Cnty.*, 398 S.W.3d 780, 785 (Tex. App.—San Antonio 2011, no pet.) ("By granting commissioners courts general control over the roads, the Legislature imposed on them a duty to make the roadways safe for public travel." (quoting *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 31–32 (Tex. 2003))); CR81–82 (acknowledging that La Salle County is responsible for maintaining Krueger Road). In fact, the Attorney General has already addressed the issue of how counties can respond to the alleged wear and tear on county roads due to the oil and gas industry. Tex. Att'y Gen. Op. No. GA-1013 (2013), *available at* https://www.texasattorneygeneral.gov/opinions/opinions/50abbott/op/2013/pdf/ga1013.pdf. Citing the county's general control of its public roads, the Attorney General ruled that counties have the authority to charge fees for permits to build high traffic access points to county roads. *Id.* at 2–3.

Vasquez's proposed duty to warn suffers from the same problem. Under Vasquez's view, private users of public roads would be required to post roadside signs of the road's possible degradation to avoid tort liability. It seems indisputable, however, that private parties have no legal right to post road signs on the right-of-way along a county road. *See* Tex. Att'y Gen. Op. No. GA-0693, at 1 (2009) (explaining that county's statutory control of county road extends to the right of way), *available at* https://www.texasattorneygeneral.gov/opinions

27

[/opinions/50abbott/op/2009/pdf/ga0693.pdf](); *see also* Tex. Transp. Code Chs. 251, 544 (containing road sign requirements). The Attorney General has ruled that counties may remove objects from the right of way. Tex. Att'y Gen. Op. No. GA-0693, at 1 (citing GA-0430 (2006),[16] JM-1241 (1990)[17]). A duty to repair or to warn might make sense when a party causes a dangerous condition by a single act—such as excavating a sidewalk or dumping oil on a roadway—but not in the context of use of a public roadway with other users where the road gradually degrades. *See Buchanan v. Rose*, 159 S.W.2d 109, 110 (Tex. 1942); *supra* n.11.

Since the defendants cannot comply with Vasquez's proposed duty, the trial court properly held that Vasquez's cause of action has no basis in law, and this Court should affirm the trial court's judgment.

### iii. Factors of foreseeability and social utility dictate that no duty be imposed on those who contribute to gradual degradation of public roads.

Finally, as stated in *Buchanan* and implied in *Grapotte*, an imposition of a duty in the present case would result in the roads being too hazardous from a public liability standpoint. *Buchanan v. Rose*, 159 S.W.2d 109, 110 (Tex. 1942); *see Grapotte v. Adams*, 111 S.W.2d 690, 691–92 (Tex. 1937). Vasquez's proposed

---

[16] *Available at* [https://www.texasattorneygeneral.gov/opinions/opinions/50abbott/op/2006/pdf/ga0430.pdf]().
[17] *Available at* [https://www.texasattorneygeneral.gov/opinions/opinions/47mattox/op/1990/pdf/jm1241.pdf]()

duty raises the same concern faced by those cases: if the law were to impose a duty to warn or repair for simply driving on a public road and contributing to the gradual degradation of the road's condition, the exposure to liability would be too broad for the public to bear. *See Buchanan*, 159 S.W.2d at 110; *see also Bird v. W.C.W.*, 868 S.W.2d 767, 769 (Tex. 1994) (including social utility of defendants' action as factor in duty analysis). The harm resulting from gradual degradation is not sufficiently foreseeable to impose a duty to warn or repair, and the courts would not be able to discern which of the millions of Texas drivers should be liable for not repairing the public roadway. *See Bird*, 868 S.W.2d at 769 (including foreseeability as factor in duty analysis).[18] Again, the number of times a party uses the road is irrelevant to duty analysis. *Grapotte*, 111 S.W.2d at 691–92. The social utility of public roads and the lack of foreseeability of the harm resulting from wear and tear dictate that no duty be imposed. As a result, the trial court properly held that the defendants had no duty in this case as a matter of law, and this Court should affirm the trial court's dismissal of the plaintiff's cause of action.

## II.    Conclusion

As a matter of law, the defendants owed no duty to act to prevent harm to others using Krueger Road. The road's maintenance is the responsibility of the

---

[18] Other factors in the duty analysis concern the burden on the defendants and the consequences of placing the burden on the defendant. *Bird*, 868 S.W.2d at 769. As discussed above, however, the defendants cannot even comply with Vasquez's proposed duty. *See supra* § I.B.ii.

county, and users have no duty to prevent harm to others merely due to driving on the road and causing it to degrade faster than the county can repair it. As a result, the trial court properly dismissed Vasquez's case for having no basis in law, and this Court should affirm the trial court's judgment.

## Prayer

For the foregoing reasons, Enterprise Products Holdings, LLC, and Enterprise Products Company request that this Court affirm the trial court's judgment.

Respectfully submitted,

Atlas, Hall & Rodriguez, LLP
818 Pecan/P.O. Box 3725
McAllen, Texas 78501/78502
(956) 682-5501 (phone)
(956) 686-6109 (facsimile)

By: /s/ J. Joseph Vale
**J. Joseph Vale**
State Bar No. 24084003
jvale@atlashall.com
**E. Michael Rodriguez**
State Bar No. 00791553
mrodriguez@atlashall.com
**Erin A. Hudson**
State Bar No. 24059978
ehudson@atlashall.com

Attorneys for Enterprise Products Holdings, LLC, and Enterprise Products Company

30

**Certificate of Rule 9.4(i) Compliance**

In compliance with Texas Rule of Appellate Procedure 9.4(i)(3), I certify that the number of words in this Brief of Appellees, excluding those matters listed in Rule 9.4(i)(1), is 4,948 words per the word processing program used for its preparation (Microsoft Word).

/s/ J. Joseph Vale
J. Joseph Vale

## Certificate of Service

I certify that the foregoing document was electronically filed with the Clerk of the Court using the electronic case filing system of the Court. I also certify that a true and correct copy of the foregoing was served on the following counsel of record on April 29, 2015 as follows:

| Recipient: | Attorney for: | Served by: |
|---|---|---|
| Jeffrey L. Dorrell (jdorrell@hanszenlaporte.com) **HANSZEN LAPORTE** 11767 Katy Freeway, Suite 850 Houston, Texas 77079 Fax: 713-524-2580 | Plaintiff/appellant Laura Zepeda Vasquez | Electronically if available, or by facsimile |
| William A. Abernethy (babernethy@dakpc.com) **DONNELL, ABERNETHY & KIESCHNICK, P.C.** 555 N. Carancahua, Suite 1770 Corpus Christi, Texas 78401-0853 Fax: 361-880-5618 | Defendant/appellee Rosetta Resources Operating, L.P. | Electronically if available, or by facsimile |
| David L. Ortega (dortega@namanhowell.com) Richard McNitzky (rmcnitzky@namanhowell.com) **NAMAN HOWELL SMITH & LEE, PLLC** 1001 Reunion Place, Suite 600 San Antonio, Texas 78216 Fax: 210-731-6300 | Defendants/appellees Lewis Energy Group, LP and Lewis Petro Properties, Inc. | Electronically if available, or by facsimile |
| Christopher Lowrance (chris.lowrance@roystonlaw.com) Karol S. Furmaga (karol.furmaga@roystonlaw.com) **ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P.** 802 N. Carancahua, Suite 1300 | Defendants/appellees Virtex Operating Company, Inc. and Virtex Holdings, LLP | Electronically if available, or by facsimile |

| | | |
|---|---|---|
| Corpus Christi, Texas  78401-0021<br>Fax:  361-884-7261 | | |
| Isaac J. Huron (ihuron@lawdcm.com)<br>Celina G. Warren<br>(cwarren@lawdcm.com)<br>**DAVIS, CEDILLO & MENDOZA, INC.**<br>McCombs Plaza, Suite 500<br>755 E. Mulberry Avenue<br>San Antonio, Texas 78212<br>Fax:  210-822-1151 | Defendants/appellees<br>Legend Natural Gas<br>III, LP, and Legend<br>Natural Gas, LLC | Electronically if<br>available, or by<br>facsimile |
| Jose E. Garcia (jeg@gvlaw.net)<br>Francisco R. Villarreal<br>**GARCIA & VILLARREAL, PLLC**<br>4311 North McColl<br>McAllen, Texas  78504<br>Fax:  956-630-3631 | Defendant/appellee<br>XTO Energy, Inc. | Electronically if<br>available, or by<br>facsimile |

/s/ J. Joseph Vale
   J. Joseph Vale

# Appendices

| Tab | Document |
| --- | --- |
| A | Tex. Transp. Code Ann. § 251.003 |
| B | Tex. Transp. Code Ann. § 251.016 |
| C | Tex. Transp. Code Ann. § 251.153 |
| D | Tex. Transp. Code Ann. § 621.301 |
| E | Timothy Patton, *Motions to Dismiss Under Texas Rule 91a: Practice, Procedure and Review*, 33 Rev. Litig. 469 (2014) [excerpt] |



TAB A

OF THE APPENDIX

# Tex. Transp. Code § 251.003

This document is current through the 2013 3rd Called Session

**Texas Statutes and Codes > TRANSPORTATION CODE > TITLE 6. ROADWAYS > SUBTITLE C. COUNTY ROADS AND BRIDGES > CHAPTER 251. GENERAL COUNTY AUTHORITY RELATING TO ROADS AND BRIDGES > SUBCHAPTER A. GENERAL PROVISIONS**

## § 251.003. Construction and Maintenance of Public Roads

(a) The commissioners court of a county may:

(1) make and enforce all necessary rules and orders for the construction and maintenance of public roads;

(2) hire the labor and purchase the machinery and equipment needed to construct and maintain public roads; and

(3) use any necessary material most convenient to build, repair, or maintain public roads, regardless of the location or extent of the material.

(b) The court may enter any necessary order for the use of inmates of the county jails to work on the county roads or to build bridges.

## History

Enacted by Acts 1995, 74th Leg., ch. 165 (S.B. 971), § 1, effective September 1, 1995.

LexisNexis ® Texas Annotated Statutes
Copyright © 2015 by Matthew Bender & Company, Inc. a member of the LexisNexis Group All rights reserved.

TAB B

OF THE APPENDIX

This document is current through the 2013 3rd Called Session

**Texas Statutes and Codes** > **TRANSPORTATION CODE** > **TITLE 6. ROADWAYS** > **SUBTITLE C. COUNTY ROADS AND BRIDGES** > **CHAPTER 251. GENERAL COUNTY AUTHORITY RELATING TO ROADS AND BRIDGES** > **SUBCHAPTER A. GENERAL PROVISIONS**

## § 251.016. General County Authority over Roads, Highways, and Bridges

The commissioners court of a county may exercise general control over all roads, highways, and bridges in the county.

## History

Enacted by Acts 1999, 76th Leg., ch. 62 (S.B. 1368), § 13.11(b), effective September 1, 1999.

LexisNexis ® Texas Annotated Statutes
Copyright © 2015 by Matthew Bender & Company, Inc. a member of the LexisNexis Group All rights reserved.

TAB C

OF THE APPENDIX

**Texas Statutes and Codes** > **TRANSPORTATION CODE** > **TITLE 6. ROADWAYS** > **SUBTITLE C. COUNTY ROADS AND BRIDGES** > **CHAPTER 251. GENERAL COUNTY AUTHORITY RELATING TO ROADS AND BRIDGES** > **SUBCHAPTER E. COUNTY TRAFFIC REGULATIONS**

## § 251.153. Load Limits on County Roads and Bridges

**(a)**  The commissioners court of a county may establish load limits for any county road or bridge in the manner prescribed by Section 621.301.

**(b)**  The commissioners court may authorize a county traffic officer, sheriff, deputy sheriff, constable, or deputy constable to weigh a vehicle to ascertain whether the vehicle's load exceeds the limit prescribed by the commissioners court.

## History

Enacted by Acts 1995, 74th Leg., ch. 165 (S.B. 971), § 1, effective September 1, 1995; am. Acts 2001, 77th Leg., ch. 1227 (S.B. 220), § 1, effective September 1, 2001.

LexisNexis ® Texas Annotated Statutes
Copyright © 2015 by Matthew Bender & Company, Inc. a member of the LexisNexis Group All rights reserved.

TAB D

OF THE APPENDIX

Texas Statutes and Codes  > TRANSPORTATION CODE  > TITLE 7. VEHICLES AND TRAFFIC  > SUBTITLE E. VEHICLE SIZE AND WEIGHT  > CHAPTER 621. GENERAL PROVISIONS RELATING TO VEHICLE SIZE AND WEIGHT  > SUBCHAPTER D. LOCAL REGULATIONS

## § 621.301. County's Authority to Set Maximum Weights

(a)  The commissioners court of a county may establish load limits for any county road or bridge only with the concurrence of the Texas Department of Transportation. A load limit shall be deemed concurred with by the Texas Department of Transportation 30 days after the county submits to the Texas Department of Transportation the load limit accompanied by supporting documentation and calculations reviewed and sealed by an engineer licensed in this state, though the Texas Department of Transportation may review the load limit and withdraw concurrence at any time after the 30-day period.

(b)  The commissioners court may limit the maximum weights to be moved on or over a county road, bridge, or culvert by exercising its authority under this subsection in the same manner and under the same conditions provided by Section 621.102 for the Texas Department of Transportation to limit maximum weights on highways and roads to which that section applies.

(c)  The commissioners court shall record an action under Subsection (b) in its minutes.

(d)  A maximum weight set under this section becomes effective on a road when appropriate signs giving notice of the maximum weight are erected by the Texas Department of Transportation on the road under order of the commissioners court.

(e)  A vehicle operating under a permit issued under Section 623.011, 623.071, 623.094, 623.121, 623.142, 623.181, 623.192, or 623.212 may operate under the conditions authorized by the permit over a road for which the commissioners court has set a maximum weight under this section.

## History

Enacted by Acts 1995, 74th Leg., ch. 165 (S.B. 971), § 1, effective September 1, 1995; am. Acts 2001, 77th Leg., ch. 941 (S.B. 886), § 19, effective September 1, 2001; am. Acts 2001, 77th Leg., ch. 1227 (S.B. 220), § 5, effective September 1, 2001; am. Acts 2011, 82nd Leg., ch. 1345 (S.B. 1420), § 61, effective September 1, 2011; am. Acts 2013, 83rd Leg., ch. 1135 (H.B. 2741), § 99, effective September 1,

2013.

LexisNexis ® Texas Annotated Statutes
Copyright © 2015 by Matthew Bender & Company, Inc. a member of the LexisNexis Group All rights reserved.

TAB E

OF THE APPENDIX

# ARTICLE: Motions to Dismiss Under Texas Rule 91a: Practice, Procedure and Review

Summer, 2014

**Reporter**

33 Rev. Litig. 469

**Length:** 47382 words

**Author:** Timothy Patton*

* Board certified in civil appellate law since 1987 by the Texas Board of Legal Specialization and author of Summary Judgments in Texas: Practice, Procedure and Review (LexisNexis 3d ed. 2013). I would like to thank Deb Grant, grammarian, proofreader, typo-inconsistency catcher extraordinaire; Suzette, my wife, who knows far more about trial practice than I and provided valuable input on procedural and evidentiary issues; and Andrew Bluebond, Brian Young, Rachel Ratcliffe, Matt Buongiorno, TJ Harris, and everyone else on the staff at The Review of Litigation for their hard work.

## LexisNexis Summary

… Examples include dismissals involving liability allegations which, even if true, were insufficient to overcome qualified immunity rules; claims asserting a duty of care not recognized under Texas law; tort causes of action pursued against a defendant whose only potential liability was in contract; and a wrongful termination claim based on an alleged exception to the employment-at-will doctrine not recognized in Texas. … The federal "plausibility" standard incorporates an assessment and determination of the plaintiff's likelihood of success on the merits so that the trial judge weighs facts alleged to see if they "plausibly" present a claim for relief at the earliest stage of the litigation. … Rather, the court will simply ignore materials not permitted as Rule 59 exhibits when deciding whether the challenged cause of action is baseless. … If filing a motion to dismiss does not waive a special appearance or motion to transfer venue, then a Rule 91a motion may be filed before filing those pleadings which, in turn, means that Rule 91a is, indeed, an "exception" to due-order-of-pleading requirements. … As counsel for the non-movant, if you're justifiably concerned about your client losing the Rule 91a motion, being designated as the "loser" under Rule 91a's loser-pays provision, and being hit with the movant's fees and costs, nonsuit the challenged cause of action, or if the client insists on going forward, make sure you've fully disclosed these risks to your client in writing. … If it is not feasible to complete discovery before the expiration of the forty-five-day deadline for a ruling, a court denying the motion to dismiss based on

case law is not entirely consistent, [66] most courts of appeals have concluded that a claim has no arguable basis in law if the legal theory on which the claim is based is "indisputably meritless." [67] Applying this definition of "no basis in law" used in inmate litigation in a rote manner to Rule 91a cases could prove problematic - and not just because the "indisputably meritless" test has somewhat uncertain aspects. In Chapter 14 cases, courts have recognized that a pro se inmate's petition should be viewed with "liberality and patience" and that an inmate is generally "not held to the stringent standards **[\*482]** applied to formal pleadings drafted by attorneys." [68] In marked contrast, attorneys who draft pleadings containing the cause of action challenged by a Rule 91a motion should not receive the liberal benefit of doubt that is afforded to pro se prisoners. [69]

b. Procedures Closely Resembling Rule 91a.1's "No Basis in Law" Standard

Actually, there's no need to search for an already-existing rule or statute using the exact phrase "no basis in law" to determine the meaning of "no basis in law" under Rule 91a. [70] For decades, Texas trial and appellate courts have resolved cases on the pleadings by deciding that the plaintiff's petition did not state a valid cause of action under Texas law. They have done so by using two procedures: special exceptions [71] and motions for summary judgment. [72] Under both procedures, as with Rule 91a, the court accepts the plaintiff's allegations and reasonable inferences arising from those allegations as true, and then decides whether the plaintiff has stated a viable cause of action in its pleading. [73]

There is no substantive difference between a liability allegation that fails to state a claim and a cause of action that has no basis in law. The fact that cases in the special exception and summary judgment contexts do not employ the precise words "no basis in law" is

---

[66] See Burnett v. Sharp, 328 S.W.3d 594, 597-98 (Tex. App. - Houston [14th Dist.] 2010, no pet.) (discussing seemingly inconsistent case law on whether determination that inmate "failed to state a cause of action as a matter of law" equates with decision that inmate's claim has "no arguable basis in law").

[67] E.g., Burnett, 328 S.W.3d at 600; Hamilton v. Pechacek, 319 S.W.3d 801, 809 (Tex. App. - Fort Worth 2010, no pet.); Nabelek v. Dist. Attorney of Harris Cnty., 290 S.W.3d 222, 228 (Tex. App. - Houston [14th Dist.] 2006, no pet.); Minix v. Gonzales, 162 S.W.3d 635, 637 (Tex. App. - Houston [14th Dist.] 2005, no pet.).

[68] E.g., Minix, 162 S.W.3d at 637; see also Hamilton, 298 S.W.3d at 339; Scott v. Gallagher, 209 S.W.3d 262, 266 (Tex. App. - Houston [1st Dist.] 2006, no pet.).

[69] See Hon. Jane Bland, Hon. Bill Boyce, & Hon. Greg Perkes, What's Appealing About the New Dismissal and Expedited Trial Rules, 23rd Annual Conference on State and Federal Appeals, June 13-14, 2013, at 10 (stating that although Rule 91a's language "suggests a parallel" with dismissal standards under Chapter 14, "no special "patience' would be mandated for attorney-drafted pleadings").

[70] See id. (suggesting that practitioners take care in relying on federal rule 12(b)(6) authorities when litigating under Rule 91a and instead "look for analogies that can be drawn to existing Texas dismissal procedures").

[71] See Tex. R. Civ. P. 91.

[72] See Tex. R. Civ. P. 166a.

[73] See infra notes 84-87 and accompanying text (discussing the requirement that before dismissing on special exceptions or rendering "no cause of action" summary judgment, trial judge ordinarily must take allegations in petition as true).

a semantic distinction if any distinction at all. If **[\*483]** the plaintiff has not stated a claim for relief under Texas law then its alleged cause of action has no basis in law for Rule 91a purposes. To use Rule 91a.1's wording, the defendant is entitled to prevail, whether pursuing special exceptions, a motion for summary judgment, or a Rule 91a motion to dismiss, if the taken-as-true allegations "do not entitle the claimant to the relief sought." [74]

Courts have long viewed special exceptions as a proper method to determine whether the plaintiff has stated a cause of action. [75] When deciding whether special exceptions should be sustained, the trial judge must accept the plaintiff's allegations and reasonable inferences from those allegations as true [76] - just as the judge must when evaluating the plaintiff's allegations under Rule 91a. [77] After sustaining special exceptions but before dismissing the plaintiff's claims, the trial judge is generally required to first give the plaintiff an opportunity to amend the pleading to state a viable cause of action. [78] If the plaintiff still has not stated a cause of action after amendment and the remaining portions of the petition also fail to state a viable claim, the trial court may dismiss the case. [79] Appellate courts have upheld dismissals based on the plaintiff's failure to state a claim in cases where, had Rule 91a been in existence, dismissal on the grounds that the challenged claim was baseless would likewise **[\*484]** have been appropriate. Examples include dismissals involving liability allegations which, even if true, were insufficient to overcome qualified immunity rules; [80] claims asserting a duty of care not recognized under Texas law; [81] tort causes of action pursued against a defendant whose only potential liability was in contract; [82] and a wrongful termination claim based on an

---

[74] Tex. R. Civ. P. 91a.1.

[75] See, e.g., Gatten v. McClarley, 391 S.W.3d 669, 673 (Tex. App. - Dallas 2013, no pet.); Alpert v. Crain, Caton & James, P.C., 178 S.W.3d 398, 405 (Tex. App. - Houston [1st Dist.] 2005, pet. denied); Buecher v. Centex Homes, 18 S.W.3d 807, 809 (Tex. App. - San Antonio 2000), aff'd on other grounds, 95 S.W.3d 266 (Tex. 2002).

[76] See, e.g., Gatten, 391 S.W.3d at 674; James v. Easton, 368 S.W.3d 799, 803 (Tex. App. - Houston [14th Dist.] 2012, pet. denied); Martin v. Clinical Pathology Labs., Inc., 343 S.W.3d 885, 891 (Tex. App. - Dallas 2011, pet. denied).

[77] Tex. R. Civ. P. 91a.1.

[78] See Parker v. Barefield, 206 S.W.3d 119, 120-21 (Tex. 2006); Gatten, 391 S.W.3d at 673; see also Baylor Univ. v. Sonnichsen, 221 S.W.3d 632, 635 (Tex. 2007) ("Generally, when the trial court sustains special exceptions, it must give the pleader an opportunity to amend the pleading, unless the pleading defect is of a type that amendment cannot cure."); see also infra notes 416-418 and accompanying text (describing circumstances when trial court need not provide a plaintiff with opportunity to amend before dismissing on special exceptions).

[79] See Tex. Dep't of Corr. v. Herring, 513 S.W.2d 6, 10 (Tex. 1974); Gatten, 391 S.W.3d at 673-74; Alpert, 178 S.W.3d at 405.

[80] E.g., Easton v. Phelan, NO. 01-10-01067-CV, 2012 Tex. App. LEXIS 3710, at 20-21 (Tex. App. - Houston [1st Dist.] May 10, 2012, no pet.) (mem. op.).

[81] E.g., Gatten, 391 S.W.3d at 673-77.

[82] E.g., Owen v. Option One Mortg. Corp., No. 01-10-00412-CV, 2011 Tex. App. LEXIS 5843, at 21-22 (Tex. App. - Houston [1st Dist.] July 28, 2011, pet. denied) (mem. op.).

alleged exception to the employment-at-will doctrine not recognized in Texas. [83]

Texas case law dealing with "no cause of action" summary judgments should be particularly useful in applying Rule 91a. If the plaintiff's "petition affirmatively demonstrates that no cause of action exists or that plaintiff's recovery is barred," the trial court is entitled to render summary judgment on the pleadings against the plaintiff and for the defendant. [84] Before granting summary judgment on the pleadings, the court must take "all allegations, facts, and inferences in the pleadings as true and view[] them in a light most favorable to the pleader," [85] - the same perspective required by Rule 91a. [86] After reviewing the pleadings in this light, if the trial court correctly concludes that the plaintiff has failed to state a viable cause of action or otherwise pled himself out of court, the court is entitled **[\*485]** to render a "no cause of action" summary judgment. [87] There are numerous examples of "no cause of action" summary judgments, affirmed on appeal, where granting a Rule 91a motion to dismiss would have been equally proper:

. Plaintiff's liability claims were based on the Texas Penal Code - a statute that does not create private civil causes of action. [88]

. The trial court correctly granted summary judgment because plaintiffs' pleadings did not state a cause of action but alleged facts, which if proven, would have established the defendant's sovereign immunity defense. [89]

---

[83]   See, e.g., Martin v. Clinical Pathology Labs., Inc., 343 S.W.3d 885, 891 (Tex. App. - Dallas 2011, pet. denied).

[84]   See, e.g., Peek v. Equip. Serv. Co., 779 S.W.2d 802, 805 (Tex. 1989); Delgado v. Combs, No. 07-11-00273-CV, 2012 Tex. App. LEXIS 8610, at 5-7 (Tex. App. - Amarillo Oct. 15, 2012, no pet.) (mem. op.); Equitable Recovery, L.P. v. Health Ins. Brokers of Tex., L.P., 235 S.W.3d 376, 388 (Tex. App. - Dallas 2007, pet. dism'd); see also infra notes 416-428 and accompanying text (discussing whether trial court is obligated to provide claimant with opportunity to amend before rendering "no cause of action" summary judgment).

[85]   Natividad v. Alexsis, Inc., 875 S.W.2d 695, 699 (Tex. 1994); Conquest Drilling Fluids, Inc. v. Tri-Flo Int'l, Inc., 137 S.W.3d 299, 309 (Tex. App. - Beaumont 2004, no pet.).

[86]   See Tex. R. Civ. P. 91a.1 (providing that a cause of action has no basis in law if allegations, taken as true, together with inferences reasonably drawn from allegations do not entitle claimant to relief sought).

[87]   See Peek, 779 S.W.2d at 805 (stating that "unless the petition affirmatively demonstrates that no cause of action exists or that plaintiff's recovery is barred, we require the trial court to give plaintiff an opportunity to amend before granting a motion to dismiss on a motion for summary judgment"); Tex. Dep't of Corr. v. Herring, 513 S.W.2d 6, 10 (Tex. 1974).

[88]   Delgado, 2012 Tex. App. LEXIS 8610, at 5-7. Probably the clearest example of a cause of action that should be dismissed as having no basis in law is when the plaintiff is attempting to recover on a theory of liability not recognized in Texas. See, e.g., Trevino v. Ortega, 969 S.W.2d 950, 952 (Tex. 1998) (refusing to recognize spoliation of evidence as independent tort); Nelson v. Krusen, 678 S.W.2d 918, 925 (Tex. 1984) ("There is no cause of action in Texas for wrongful life"); San Saba Energy, L.P. v. McCord, 167 S.W.3d 67, 73 (Tex. App. - Waco 2005, pet. denied) (collecting cases holding that Texas does not permit one party to a contract to sue another party to the contract for conspiracy to breach contract).

[89]   Perser v. Perser, 738 S.W.2d 783, 784 (Tex. App. - Fort Worth 1987, writ denied).

. Plaintiff's claim, based on the existence of an implied statutory cause of action for wrongfully terminating a public employee for filing a grievance, did not state a claim recognized under existing Texas law. [90]

. The trial court correctly granted a "no cause of action" summary judgment because defendants owed no duty to plaintiffs based on the allegations in the plaintiffs' petition and duty is an essential element of a cause of action for negligence. [91]

 **[*486]**  . Plaintiff failed to state a claim by alleging facts that established that his Texas Tort Claims Act claims were based on providing or failing to provide police protection, which is an exempt activity under the Act. [92]

. Plaintiff's allegations of intentional infliction of emotional distress, even when taken as true, failed to rise to the level of outrageous misconduct required to state a valid claim. [93]

. Plaintiffs failed to allege a viable cause of action for fraud because their fraud claims were based on communications during the course of the litigation which were absolutely privileged. [94]

. Plaintiffs "did not plead a cause of action" and "cited no authority" that issuing a notice of cancellation of a health insurance policy (without more) constituted extreme and outrageous misconduct. [95]

## 3. Applying Rule 91a to Unsettled or Novel Legal Theories

An additional aspect of "no basis in law" under Rule 91a warrants mention. Rule 13, the sanctions rule, defines "groundless" as meaning "no basis in law … and not warranted by good faith argument for the extension, modification, or reversal of existing  **[*487]**  law." [96] The original draft of the dismissal rule proposed by the Supreme Court Advisory

---

[90]    Johnson v. Waxahachie Indep. Sch. Dist., 322 S.W.3d 396, 399-400 (Tex. App. - Houston [14th Dist.] 2010, pet. denied).

[91]    Kehler v. Eudaly, 933 S.W.2d 321, 325 (Tex. App. - Fort Worth 1996, writ denied).

[92]    Strickland v. Denver City, 559 S.W.2d 116, 118-19 (Tex. Civ. App. - Eastland 1977, no writ); see also Clawson v. Wharton Cnty., 941 S.W.2d 267, 271-73 (Tex. App. - Corpus Christi 1996, writ denied) (affirming summary judgment because the plaintiffs alleged facts that, if proved, would establish sovereign immunity defense).

[93]    Natividad v. Alexsis, Inc., 875 S.W.2d 695, 698-99 (Tex. 1994).

[94]    Settle v. George, No. 02-11-00444-CV, 2012 Tex. App. LEXIS 5831, at 8-10 (Tex. App. - Fort Worth July 19, 2012, no pet.) (mem. op.).

[95]    Winters v. Parker, 178 S.W.3d 103, 105-06 (Tex. App. - Houston [1st Dist.] 2005, no pet.).

[96]    Tex. R. Civ. P. 13 (emphasis added); McIntyre v. Wilson, 50 S.W.3d 674, 687-88 (Tex. App. - Dallas 2001, pet. denied) (reversing Rule 13 sanctions against some appellants who raised a good faith argument for extending, modifying or reversing existing law while affirming sanctions against other appellant who did not). The definition of "groundless" in the Texas Civil Practice and Remedies Code